IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 8, 2001 Session

## STATE OF TENNESSEE  v.  ROBERT L. MALLARD

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Rutherford County**
**No. M-46579     Hon. J.S. Daniel, Judge**

---

### No. M-1999-00003-SC-R11-CD - Filed March 22, 2001

---

In this appeal, we address whether Tennessee Code Annotated section 39-17-424 (1997) requires admission into evidence of a defendant's prior convictions relating to controlled substances, even when Tennessee Rule of Evidence 404(b) would otherwise render such evidence inadmissible. During the appellant's trial in the Rutherford County Circuit Court for possession of drug paraphernalia, the State admitted evidence of the appellant's prior convictions for possession of crack cocaine and drug paraphernalia under section 39-17-424 to show that the object possessed was classifiable as drug paraphernalia. Upon his conviction, the appellant appealed to the Court of Criminal Appeals, which affirmed his conviction and held that the statute required admission of the prior convictions notwithstanding any otherwise applicable rule of evidence. We granted the appellant's application for permission to appeal, and we hold that the legislature did not intend for section 39-17-424 to operate without regard to the Rules of Evidence. We also hold that the evidence of the appellant's prior convictions was improperly admitted under Rule 404(b), and that this error affirmatively appears to have affected the outcome of the trial on its merits. We therefore reverse the Court of Criminal Appeals and remand this case to the Rutherford County Circuit Court for a new trial.

**Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the Court of Criminal Appeals Reversed; Case Remanded for a New Trial**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

Gerald L. Melton, District Public Defender; Brion J. Payne, Assistant Public Defender, for the appellant, Robert L. Mallard.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; J. Ross Dyer, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee.

# OPINION

## BACKGROUND

During the evening of July 27, 1998, two officers with the narcotics division of the Rutherford County Sheriff's Department were conducting surveillance of a house suspected of harboring drug activity. At about 9:00 p.m., the officers observed the appellant, Robert Mallard, drive up to the house and go inside. The appellant returned to his car a few minutes later, and the officers decided to pursue him as he left the house. After following the appellant for about a mile down the road, the officers stopped him for a traffic violation.

At some point during the stop, one of the officers requested and obtained the appellant's consent to search the car. While searching through the center console, the officer discovered a small glass stem that appeared to him to be a pipe used to smoke crack cocaine.[1] According to the officer's testimony at trial, the appellant admitted that the pipe was his, that he had a drug problem, and that he had smoked crack cocaine the previous day. The officer then issued the appellant a misdemeanor citation for possession of drug paraphernalia and released him.

On November 4, 1998, the Rutherford County Grand Jury indicted the appellant on one count of unlawful possession of drug paraphernalia with intent to use in violation of Tennessee Code Annotated section 39-17-425(a) (1997). Prior to trial, the State served notice of its intention to introduce as evidence the appellant's two prior convictions for possession of drug paraphernalia and his prior conviction for possession of crack cocaine. The purpose of introducing these convictions, according to the State, was to determine "whether the pipe found in the defendant's possession on July 27, 1998[,] constitutes drug paraphernalia." The appellant then filed a motion in limine to exclude the evidence of the prior convictions under Rule of Evidence 404(b), but the trial court denied the motion, finding that the prior convictions were deemed to be statutorily relevant pursuant to Tennessee Code Annotated section 39-17-424(2) (1997).[2] The court also declined to hold an evidentiary hearing as otherwise required by Rule 404(b).

At trial, the State called Officer Robert Prestininizi, one of the arresting officers, to testify as to the stop and as to his finding of the glass pipe. Although the original pipe was lost prior to trial, Officer Prestininizi described the item and drew a picture of it for the jury. The officer also told the jury that the appellant admitted possession of the pipe and that he had smoked crack cocaine as

---

[1] According to Officer Prestininizi's description of the item given at trial, it was a "small, approximately three to four inch, straw-like pipe." The item also had "a filter and Brillo pad behind that filter," which was further evidence to the officer that the object was drug paraphernalia.

[2] In denying the appellant's motion again in a hearing on his motion for a new trial, the trial court stated its belief that section 39-17-424 is "an aberration from 404(b) and Parton and the [progeny] that set[] forth the Tennessee Rules of Evidence, Bunch. But it is the legislature's prerogative to change the common law. And the evidentiary rules are a codification of the common law. And they've done so in this issue in the proof of some item, whether it is or is not drug paraphernalia."

recently as the day before the stop. Pursuant to its prior notice, the State also introduced evidence of the appellant's prior convictions for possession of cocaine and of drug paraphernalia. After receiving the judgments of conviction into evidence, the trial court gave the jury the following instruction:

> All right. I might at this point instruct the jury, this is a little bit unusual, but you're not to consider these convictions as evidence of guilt of the offense of which this Defendant is now on trial. This goes to credibility.
>
> But in this particular case, because of a statutory requirement under 39-17-424, you can consider this testimony and this evidence here and these convictions as to determine knowledge of the drug paraphernalia, the subject matter of the particular charge. That's one of the factors that can be considered under that statutory requirement. And that's the reason it's being allowed . . . .

Testifying on his own behalf, the appellant denied telling the officer that the pipe belonged to him. Although he admitted giving consent to the officers to search the car, the appellant testified that he had borrowed the car from someone else and that the crack pipe belonged to the actual owner. He further denied having seen the pipe prior to its discovery by Officer Prestininizi or that he was even aware of its existence. Nevertheless, on February 4, 1999, the jury found the appellant guilty of the crime as charged, and the trial court sentenced him to serve eleven months, twenty-nine days in the county workhouse. The court also fined the appellant $750.00.

On his appeal to the Court of Criminal Appeals, the appellant argued, among other things, that the trial court erred in not holding an evidentiary hearing pursuant to Rule of Evidence 404(b) to determine the admissibility of his prior convictions. Although the intermediate court found a conflict between the provisions of section 39-17-424 and Rule 404(b), it permitted the evidence of the prior convictions, finding that the Rules of Evidence were governed by the statute. The Court of Criminal Appeals first reasoned that because section 39-17-424 was enacted four years after the first articulation of Rule 404(b) in State v. Parton, 694 S.W.2d 299 (Tenn. 1985), the statute prevailed over the rule of evidence. The court also reasoned that because section 39-17-424 applies to specific evidentiary admissions in specific prosecutions, this statute governed the more general prohibition on prior acts as found in Rule 404(b). Concluding that the trial court did not err in admitting evidence of the appellant's prior offenses, the Court of Criminal Appeals affirmed the appellant's conviction and sentence.

The appellant then requested permission to appeal from this Court, which we granted on the issue of whether Tennessee Code Annotated section 39-17-424 requires admission into evidence of a defendant's prior convictions relating to controlled substances, even when Tennessee Rule of Evidence 404(b) would otherwise render such evidence inadmissible. For the reasons given herein, we conclude that the General Assembly did not intend for section 39-17-424 to *require* a court to admit evidence of prior convictions without judicial consideration of any otherwise applicable rules of evidence, as such a construction would call into question the validity of the statute. We also hold

that the evidence of the appellant's prior convictions was inadmissible in this case under Rule 404(b) and that this error affirmatively appears to have affected the outcome of this trial. The appellant's conviction is reversed, his sentence is vacated, and this case is remanded to the Rutherford County Circuit Court for a new trial.

## POSSIBLE CONFLICT BETWEEN TENNESSEE CODE ANNOTATED SECTION 39-17-424 AND TENNESSEE RULE OF EVIDENCE 404(B)

In August 1979, the United States Drug Enforcement Agency drafted a proposed amendment to the Uniform Controlled Substances Act to restrict the possession of drug paraphernalia. See Model Drug Paraphernalia Act Preamble (1979). Previous attempts by states to enact such legislation had been routinely defeated in the courts on vagueness or overbreadth grounds, and several states issued calls concerning the need for an effective piece of legislation that would withstand these constitutional challenges. See id. preamble. To accomplish this goal, the drafters of the Model Drug Paraphemalia Act tried to restrict the scope of unlawful conduct by including a specific intent requirement and by listing certain factors for courts to consider when determining whether an object is drug paraphernalia. See id. arts. I, II. At least forty-four jurisdictions have adopted variations of the Model Act to date, and all of these statutes contain, in one form or another, the Act's list of factors for trial courts to use in determining whether a particular object is classifiable as drug paraphernalia.[3]

In 1984, the Tennessee General Assembly enacted its own drug paraphernalia law based upon the Model Drug Paraphernalia Act with slight alterations. See 1984 Tenn. Pub. Acts ch. 1005 (codified in scattered sections of title 39, part 17). Perhaps the most significant of these alterations for purposes of this case is the language currently appearing in Tennessee Code Annotated section

---

[3] Twenty-four jurisdictions, including Tennessee, list the defendant's previous convictions for drug offenses as one such factor to consider. See Ala. Code § 13A-12-260 (1994); Ariz. Rev. Stat. Ann. § 13-3415 (West 1989); Ark. Code Ann. § 5-64-101(v) (Michie 1993); Cal. Health & Safety Code § 11364.7 (West Supp. 2000); Haw. Rev. Stat. Ann. § 329-1 (Michie 1993); Idaho Code § 37-2701(n) (1994); Kan. Stat. Ann. § 65-4151 (1992); Ky. Rev. Stat. Ann. § 218A.510 (Michie 1995); Me. Rev. Stat. Ann. tit. 17-A, § 1111-A(3) (West 1983 & Supp. 2000); Md. Ann. Code art. 27, § 287A (1997); Miss. Code Ann. § 41-29-105(v) (1993); Mo. Ann. Stat. § 195.010(17) (West 1996); Mont. Code Ann. § 45-10-102 (1996); Neb. Rev. Stat. Ann. § 28-440 (Michie 1995); Nev. Rev. Stat. Ann. § 453.556 (Michie 1996); N.H. Rev. Stat. Ann. § 318-B:2(IV) (1995); N.M. Stat. Ann. § 30-31-2(V)(13) (Michie 1989); N.C. Gen. Stat. § 90-113.21(b)(1993); N.D. Cent. Code § 12.1-31.1-02 (1985); Pa. Stat. Ann. tit. 35, § 780-102(b) (West 1993); R.I. Gen. Laws § 21-28.5-1 (1989); Tenn. Code Ann § 39-17-424 (1997); Utah Code Ann. § 58-37a-4 (1996); Wash. Rev. Code Ann. § 69.50.102(b) (West 1994).

Twenty jurisdictions do not include a defendant's prior crimes among the "relevant" considerations. See Colo. Rev. Stat. Ann. § 18-18-427 (West 1997); Conn. Gen. Stat. Ann. § 21a-270 (West 1994); Del. Code Ann. tit. 16, § 4775 (1995); D.C. Code Ann. § 33-602 (1993); Fla. Stat. Ann. § 893.146 (Supp. 2000); Ga. Code Ann. § 16-13-32.1(c) (Supp. 2000); 720 Ill. Comp. Stat. Ann. § 600/3.5 (West 1993); La. Rev. Stat. Ann. § 40:1032 (West 1992); Mass. Gen. Laws Ann. ch. 94C, § 1 (West 1984 & Supp. 2000); N.J. Stat. Ann. § 2C:36-1 (West 1995); Ohio Rev. Code Ann. § 2925.14 (Banks-Baldwin 1996); Okla. Stat. Ann. tit. 63, § 2-101.1 (West 1997); Or. Rev. Stat. § 475.525 (1995); S.C. Code Ann. § 44-53-391(b) (Law Co-op. Supp. 2000); S.D. Codified Laws Ann. § 22-42A-2 (Michie 1988); Tex. Health & Safety Code Ann. § 481.183 (West 1992); V.I. Code Ann. tit. 19, § 593(13)(M) (1995); Vt. Stat. Ann. tit. 18, § 4475 (Supp. 2000); Va. Code Ann. § 18.2-265.2 (Michie 1996); Wis. Stat. Ann. § 161.572 (West 1997).

39-17-424, which contains the list of factors that trial courts in this state "shall" consider to determine whether a particular object is drug paraphernalia.[4] The seemingly mandatory language of this section is a deviation from the Model Act, which states only that a trial court "should" consider the enumerated factors. See Model Drug Paraphernalia Act art. I. While the comments to the Model Act suggest that "[t]he listing of these factors in the Model Act is not intended to be peremptory" and that "a court or other authority is not obligated to hear evidence on, or to consider, every factor listed," see Model Drug Paraphernalia Act comments to art. I, the parties in this case are in dispute as to whether our General Assembly intended a different interpretation with its use of the mandatory language in the Tennessee legislation.[5] The issues in this case, therefore, are (1) whether section 39-17-424, with its mandatory language, conflicts with the provisions of the Tennessee Rules of Evidence, and (2) if so, whether the General Assembly intended that the statute be given effect notwithstanding any conflicting rule of evidence.

---

[4] The full text of the statute, which has not been amended since its original enactment, reads as follows:
In determining whether a particular object is drug paraphernalia as defined by § 39-17-402, the court or other authority making such a determination shall in addition to all other logically relevant factors consider the following:

    (1)     Statements by the owner or anyone in control of the object concerning its use;
    (2)     Prior convictions, if any, of the owner or of anyone in control of the object for violation of any state or federal law relating to controlled substances;
    (3)     The existence of any residue of controlled substances on the object;
    (4)     Instructions, oral or written, provided with the object concerning its use;
    (5)     Descriptive materials accompanying the object which explain or depict its use;
    (6)     The manner in which the object is displayed for sale;
    (7)     The existence and scope of legitimate uses for the object in the community;  and
    (8)     Expert testimony concerning its use.

Tenn. Code Ann. § 39-17-424 (1997).

The Tennessee Drug Paraphernalia Act includes only eight of the original fourteen "relevant" considerations listed by the Model Act. Among those considerations omitted from the Tennessee statute are: (1) The proximity of the object, in time and space, to a direct violation of this Act; (2) The proximity of the object to controlled substances; (3) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of this Act; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this Act shall not prevent a finding that the object is intended for use, or designed for use as Drug paraphernalia; (4) National and local advertising concerning its use; (5) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products; and (6) Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise. See Model Drug Paraphernalia Act art. I.

[5] Indeed, some federal appellate courts have recognized that this comment is evidence of the drafters' intent not to preempt any otherwise applicable rules of evidence. See Levas v. Village of Antioch, 684 F.2d 446, 454 (7th Cir. 1982) ("There is a non-exhaustive list of factors that 'a court or other authority should consider.' Some are obviously highly probative . . . . Others can be probative, *provided their possible prejudicial impact is adequately weighed under applicable evidentiary rules*: *e.g.*, (b) prior convictions of the person who owns or controls an object under federal or state drug laws . . . .") (emphasis added); Record Revolution No. 6, Inc. v. City of Parma, 638 F.2d 916, 933 (6th Cir. 1980), *vacated and reversed on other grounds*, 709 F.2d 534 (6th Cir. 1983) ("The drafters of the Model Act set forth this list to minimize the risk of arbitrary and discriminatory enforcement. *They did not intend the list to super[s]ede any rules of evidence or to interfere with the factfinding of the trier of fact*.") (emphasis added).

Both lower courts agreed that section 39-17-424 appears to directly conflict with Rule of Evidence 404(b). This Rule provides generally that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait," and it sets forth specific procedures to determine when such evidence is properly admissible.[6] The strict interpretation of the statute given by the lower courts is not unreasonable, as a plain reading of the statute appears to mandate consideration of prior convictions, albeit for a limited purpose, without regard to judicial determinations of relevancy or of the need to balance the probative value of the evidence with its danger of unfair prejudice as required by Rule 404(b). Indeed, in its brief before this Court, the State argues that the statute, with its mandatory language, is properly construed to *require* admission of such evidence in all circumstances. Nevertheless, despite this apparent conflict between section 39-17-424 and Rule 404(b), we do not believe that the legislature intended for the courts to strictly construe this statute to operate without regard to the Rules of Evidence.

In construing any statute, our "essential duty" is "'to ascertain and carry out the legislature's intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" Lavin v. Jordon, 16 S.W.3d 362, 365 (Tenn. 2000) (quoting Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc., 978 S.W.2d 91, 93 (Tenn. 1998)). When the language of a statute is clear and unambiguous, "legislative intent is to be ascertained from the plain and ordinary meaning of the statutory language used." Gragg v. Gragg, 12 S.W.3d 412, 415 (Tenn. 2000). However, when this court finds that (1) a statute can legitimately be construed in various ways, and (2) one of those constructions presents a constitutional conflict, then "[i]t is our duty to adopt a construction which will sustain the statute and avoid [that] constitutional conflict, if its recitations permit such a construction." Marion County Bd. of Comm'rs v. Marion County Election Comm'n, 594 S.W.2d 681, 684-85 (Tenn. 1980). In no case, though, is the judiciary empowered to substitute its own policy judgments for those of the General Assembly or to adopt a construction that is clearly contrary to the intent of the General Assembly. See, e.g., Griffin v. Shelter Mut. Ins. Co., 18 S.W.3d 195, 201 (Tenn. 2000).

The authority of the General Assembly to enact rules of evidence in many circumstances is not questioned by this Court. Its power in this regard, however, is not unlimited, and any exercise of that power by the legislature must inevitably yield when it seeks to govern the practice and procedure of the courts. Only the Supreme Court has the inherent power to promulgate rules

---

[6] Tennessee Rule of Evidence 404(b) provides that:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
> (1) The court upon request must hold a hearing outside the jury's presence;
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
> (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

governing the practice and procedure of the courts of this state, see, e.g., State v. Reid, 981 S.W.2d 166, 170 (Tenn. 1998) ("It is well settled that Tennessee courts have inherent power to make and enforce reasonable rules of procedure."); see also Tenn. Code Ann. §§ 16-3-401, -402 (1994), and this inherent power "exists by virtue of the establishment of a Court and not by largess of the legislature," Haynes v. McKenzie Mem'l Hosp., 667 S.W.2d 497, 498 (Tenn. Ct. App. 1984). Furthermore, because the power to control the practice and procedure of the courts is inherent in the judiciary and necessary "to engage in the complete performance of the judicial function," cf. Anderson County Quarterly Court v. Judges of the 28th Judicial Cir., 579 S.W.2d 875, 877 (Tenn. Ct. App. 1978), this power cannot be constitutionally exercised by any other branch of government, see Tenn. Const. art. II, § 2 ("No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted."). In this area, "[t]he court is supreme in fact as well as in name." See Barger v. Brock, 535 S.W.2d 337, 341 (Tenn. 1976).

Despite the clear expression of the separation of powers doctrine in Article II and elsewhere, however, "it is impossible to preserve perfectly the 'theoretical lines of demarcation between the executive, legislative and judicial branches of government.' Indeed there is, by necessity, a certain amount of overlap because the three branches of government are interdependent." Petition of Burson, 909 S.W.2d 768, 774 (Tenn. 1995). In recognition of this important principle, we have frequently acknowledged the broad power of the General Assembly to establish rules of evidence in furtherance of its ability to enact substantive law. See Daugherty v. State, 393 S.W.2d 739, 743 (Tenn. 1965). But as the General Assembly can constitutionally exercise only the legislative power of the state, its broad ability to enact rules for use in the courts must necessarily be confined to those areas that are appropriate to the exercise of that power. Although any discussion of the precise contours of this legislative power is not appropriate in this case, it is sufficient to acknowledge that such power exists and that it is necessarily limited by the very nature of the power itself.

Notwithstanding the constitutional limits of legislative power in this regard, the courts of this state have, from time to time, consented to the application of procedural or evidentiary rules promulgated by the legislature. Indeed, such occasional acquiescence can be expected in the natural course of events, as this practice is sometimes necessary to foster a workable model of government. When legislative enactments (1) are reasonable and workable within the framework already adopted by the judiciary, and (2) work to supplement the rules already promulgated by the Supreme Court, then considerations of comity amongst the coequal branches of government counsel that the courts not turn a blind eye. See Newton v. Cox, 878 S.W.2d 105, 112 (Tenn. 1994) (upholding legislative regulation of attorneys when the regulation (1) did not "directly conflict with the Supreme Court's authority," and (2) was merely "designed to declare" public policy). This Court has long held the view that comity and cooperation among the branches of government are beneficial to all, and consistent with constitutional principles, such practices are desired and ought to be nurtured and maintained. While it is sometimes difficult to practically ascertain where Article II, section 2 draws

the line, the distinction may be simply stated as that between cooperation and coercion. See Phoenix Newspapers, Inc. v. Superior Court, 882 P.2d 1285, 1290 (Ariz. Ct. App. 1993).[7]

It must be emphasized, however, that the consent of the courts to legislative regulation of inherent judicial authority is purely out of considerations of inter-branch comity and is not required by any principle of free government. To hold otherwise would be to irreparably damage the division of governmental power so essential to the proper maintenance of our constitutional republic. As the Court of Appeals has stated,

> In deference to separation of powers, judges will lean over backward to avoid encroaching on the legislative branch's (power) . . . .
>
>      . . . .
>
>     However, the separation of powers doctrine, properly understood, imposes on the judicial branch not merely a Negative duty Not to interfere with the executive or legislative branches, but a Positive responsibility to perform its own job efficiently. This Positive aspect of separation of powers imposes on courts affirmative obligations to assert and fully exercise their powers, to operate efficiently by modern standards, to protect their independent status, and to fend off legislative or executive attempts to encroach upon judicial [prerogatives].

Anderson County Quarterly Court, 579 S.W.2d at 878 (citations omitted) (omission and first alteration in original). Other courts have also recognized the important obligation placed upon the judiciary to prevent the needless erosion of its power. As the Supreme Court of Nebraska has acknowledged,

> Throughout the judicial history of the present system the courts have scrupulously respected the prerogatives of the legislative and executive departments and extended to them the comity due to governmental divisions of equal rank, but courtesy does not extend to the surrendering of judicial power. It is an imperative duty of the judicial department of government to protect its jurisdiction at the boundaries of power fixed by the Constitution.

---

[7] One recent example of deference to considerations of inter-branch comity in this regard is illustrated by our decision in State v. Scott, 33 S.W.3d 746, 759-60 (Tenn. 2000). In Scott, we gave effect to a statute which presumed that DNA evidence generally provides for a reliable method of proving identification. See Tenn. Code Ann. § 24-7-117. Although the statute removed the judicial determination of reliability otherwise required for scientific or novel evidence, we essentially held that the statute was a reasonable and workable addition to the Rules of Evidence, in part, because (1) the statute was otherwise subject to all of the applicable Rules of Evidence; (2) the statute permitted the defendant to introduce evidence that the particular tests at issue were not reliable methods of identification; and (3) the statute in no way prevented the defendant from questioning the State's expert as to the trustworthiness or reliability of any analysis of those tests. Given these limitations, Tennessee Code Annotated section 24-7-117, while certainly an attempt to control the practice and procedure of the courts, represented a reasonable and workable procedure within our existing rules, and as such, considerations of inter-branch comity counseled that we defer to the legislature's desire in this regard.

-8-

Shepherd v. Nebraska Equal Opportunity Comm'n, 557 N.W.2d 684, 693 (Neb. 1997); Island County v. State, 955 P.2d 377, 389 (Wash. 1998) (Sanders, J., concurring) (stating that surrender of judicial power, "often euphemistically denominated 'restraint,' is sometimes falsely glorified as an aspect of the judiciary's role as a co-equal branch of government; however, in matters of constitutional law, the judiciary is not co-equal, but supreme").

Just as the General Assembly has no constitutional power to enact rules that infringe upon the protections of the Declaration of Rights, State v. Pilkey, 776 S.W.2d 943, 951 (Tenn. 1989); Tennessee Dep't of Hum. Servs. v. Vaughn, 595 S.W.2d 62, 63 (Tenn. 1980), the legislature can have no constitutional authority to enact rules, either of evidence or otherwise, that strike at the very heart of a court's exercise of judicial power, see People v. Jackson, 371 N.E.2d 602, 604 (Ill. 1977) ("If the power is judicial in character, the legislature is expressly prohibited from exercising it."). Among these inherent judicial powers are the powers to hear facts, to decide the issues of fact made by the pleadings, and to decide the questions of law involved. See Morrow v. Corbin, 62 S.W.2d 641, 645 (Tex. 1933). As an essential corollary to these principles, any determination of what evidence is *relevant*, either logically or legally, to a fact at issue in litigation is a power that is entrusted solely to the care and exercise of the judiciary. See Opinion of the Justices, 688 A.2d 1006, 1016 (N.H. 1997). Indeed, a "court's constitutional function to independently decide controversies is impaired if it must depend on, or is limited by, another branch of government in determining and evaluating the facts of the controversies it must adjudicate." Id. Consequently, any legislative enactment that purports to remove the discretion of a trial judge in making determinations of logical or legal relevancy impairs the independent operation of the judicial branch of government, and no such measure can be permitted to stand.

If strictly construed, section 39-17-424 would represent a legislative attempt to remove a judge's discretion to determine what evidence is logically or legally relevant to an ultimate fact of consequence. Moreover, to the extent that a strict interpretation of the statute's mandatory language would preempt Rules of Evidence 401, 402, and 404(b), the statute would work to undermine, rather than to supplement, judicial determinations of logical and legal relevancy.[8] Nevertheless, while section 39-17-424 could be read in this manner, we will not lightly presume that the legislature intended to usurp the role of the courts in exercising the judicial power of the state. Indeed, because we give all legislative enactments a strong presumption of constitutionality, Petition of Burson, 909 S.W.2d 768, 775 (Tenn. 1995), we will presume that the legislature did *not* intend to infringe upon the proper exercise of the judicial power in this state and that therefore, it did not intend for courts to strictly construe this statute in the manner adopted by the lower courts.

So presuming, it seems clear that the legislature intended only to suggest factors for trial courts to consider when assessing whether an object constitutes drug paraphernalia in order to

---

[8] Tennessee Rule of Evidence 401 defines "relevant evidence" as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 provides that "[a]ll relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules, or other rules or laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible."

minimize the risk of arbitrary or discriminatory enforcement of the law. Cf. Model Drug Paraphernalia Act (1979) comments art. I.[9] As such, the requirements of section 39-17-424 are more properly interpreted to supplement, rather than impair, the operation of the Rules of Evidence. Accordingly, in recognition of our duty to interpret statutes so as to provide for harmonious operation of the laws, Holder v. Tennessee Judicial Selection Comm'n, 937 S.W.2d 877, 833 (Tenn. 1996), we hold that a trial court should admit the types of evidence listed in Tennessee Code Annotated section 39-17-424 to demonstrate that the object at issue is classifiable as drug paraphernalia, but the court may do so only to the extent that the proffered evidence otherwise meets all of the requirements for admissibility under the Rules of Evidence.[10]

Although the Court of Criminal Appeals in this case concluded that the statute prevailed over any conflicting rules of evidence, we respectfully disagree with the two rationales advanced by that court to resolve the apparent conflict between these provisions. The intermediate court first reasoned that when two laws conflict, the last provision to be enacted usually governs. Using this rationale, the court explained that although Rule 404(b) was enacted after section 39-17-424, the antecedent of Rule 404(b) was first articulated in 1985 in State v. Parton, 694 S.W.2d 299 (Tenn. 1985). Because the statute, under this theory, was enacted four years after the first articulation of the standard later to become Rule 404(b), the court reasoned that the statute governed.

We cannot agree that the Court of Criminal Appeals properly applied this canon of construction in this case. Although the court traced the roots of Rule 404(b) back to our decision

---

[9] In relevant part, these comments read as follows:

The listing of these factors in the Model Act is not intended to be peremptory; a court or other authority is not obligated to hear evidence on, or to consider, every listed factor. Rather, *the factors have been included to guide law enforcement officers, judges, and juries in their determination of what is controlled.* Providing guidance on the practical application of the Act *minimizes the risk of arbitrary and discriminatory enforcement*, sometimes associated with even the most carefully drafted statutes.

(emphasis added).

[10] Judicial construction of statutes to avoid possible infringement upon the inherent power of the judiciary is not uncommon, even if such construction results in inserting additional requirements not found in the plain language of the statute itself. In Petition of Burson, 909 S.W.2d 768, 776 (Tenn. 1995), this Court was faced with the question of whether the General Assembly could prescribe penalties for the unauthorized practice of law. Although we held that regulation of the unauthorized practice of law was a power inherent in the judiciary, we permitted the legislature to prescribe a criminal penalty for this unlawful conduct, see Tenn. Code Ann. § 23-3-103(b) (1994), because the legislation was "an aid to the inherent power of this Court rather than an infringement upon our constitutional and inherent responsibilities." Burson, 909 S.W.2d at 776.

In defining the phrase "unauthorized practice of law," the legislature did not include the requirement of Supreme Court Rule 8, EC 3-5 that conduct may constitute unauthorized practice of law "only if the doing of those acts requires 'the professional judgment of a lawyer.'" Compare Tenn. Code Ann. § 23-3-101, with Tenn. R. Sup. Ct. 8. Nevertheless, to avoid constitutional problems, we construed the statute to include this additional qualification as otherwise required by our Rules. So construed, the statute was a proper reflection of legislative intent, and it avoided any constitutional deficiencies in this regard. We recognize that it would be clearly inappropriate to include additional requirements not found in the plain language of the statute if such a construction would not further the intent of the legislature in enacting the statute.

in Parton, we cannot determine why it was unnecessary to also trace the antecedent of the statute back to *its* original enactment in 1984.  See 1984 Tenn. Pub. Acts ch. 1005.  As the statute was unaltered by the General Assembly during its re-enactment in 1989, the legislature's intent is more properly ascertained by looking to the statute's original enactment in 1984.  See Passamano v. Travelers Indem. Co., 882 P.2d 1312, 1321-22 (Colo. 1994) ("A legislative intent to change the meaning of a statute in the course of a general revision will not be inferred unless such an intention is required by express legislative language."); Mendez v. Superior Court, 253 Cal. Rptr. 731, 738 (Cal. Ct. App. 1988) (stating that when the legislature merely recodifies a statute under a new number, "there is no reasonable inference that the Legislature has altered its original intent or motivation").  Because the original enactment of the statute in 1984 can give us no clue as to the legislature's intent with regard to our later arising decision in Parton and its progeny, including Rule 404(b), this canon of construction provides an unpersuasive basis for resolving the apparent conflict in the statutes.

The intermediate court also found that the statute prevailed over Rule 404(b) because the statute addresses a specific piece of evidence admitted in a specific context for a specific purpose. In so finding, however, the Court of Criminal Appeals overlooked the effect of Tennessee Code Annotated section 16-3-406 (1994), which provides that "[a]fter such rules shall have become effective, all law in conflict therewith shall be of no further force or effect."  According to the plain language of this statute, therefore, once the Rules of Evidence became effective on January 1, 1990, all conflicting statutes in effect at that time were rendered inoperative.  As there is no dispute that section 39-17-424 was in effect when the Rules became effective, that statute can be "of no further force or effect" to the extent that it conflicts with Rule 404(b), irrespective of the specific nature of the issues addressed by it.[11]  Cf. Bush v. Bradshaw, 615 S.W.2d 157, 158 (Tenn. 1981); see also Haynes v. McKenzie Mem'l Hosp., 667 S.W.2d 497, 498 (Tenn. Ct. App. 1984).

However, even if section 39-17-424 was rendered inoperative upon the enactment of the Rules of Evidence, we believe that this statute, as properly construed, is one to which the courts should give effect in the interest of inter-branch comity.  Because the legislature did not intend for the factors in section 39-17-424 to be absolute or preemptive, and because the legislature did not intend to remove the discretion of the trial judge to determine the logical or legal relevance of such evidence, the statute supplements the Rules of Evidence and should be permitted to operate to the fullest extent allowed by the Rules.  We believe that this construction is sound because it gives operational effect to both statutes, and it is in accord with the intention of the General Assembly to help supplement and guide the judicial process so as to prevent arbitrary and discriminatory enforcement of the drug paraphernalia laws.  Therefore, finding that section 39-17-424 does not preempt any otherwise applicable Rules of Evidence, we must turn our attention to consider whether the trial court properly admitted evidence of the appellant's prior convictions in this case.

---

[11] It is true that Rule of Evidence 101 provides that "[t]hese rules shall govern evidence rulings in all trial courts of Tennessee except as otherwise provided by statute or rules of the Supreme Court of Tennessee."  However, this Rule is not properly construed to give the legislature the power to supersede by statute otherwise applicable rules of evidence.  Rather, as suggested by the Advisory Commission Comments, the power contemplated by Rule 101 is only the ability to require a particular forum to apply the Rules to its own proceedings.

## APPLICATION OF TENNESSEE CODE ANNOTATED
## SECTION 39-17-424 IN THIS CASE

The appellant in this case was indicted and convicted for possession of drug paraphernalia with intent to use it in violation of Tennessee Code Annotated section 39-17-425(a) (1997), which reads in relevant part as follows:

> (a)(1)   Except when used or possessed with the intent to use by a person authorized by this part and title 53, chapter 11, parts 3 and 4 to dispense, prescribe, manufacture or possess a controlled substance, it is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this part.

As can be seen from the statute, the State had the burden in this case of proving three elements beyond a reasonable doubt: (1) that the defendant possessed an object; (2) that the object possessed was classifiable as drug paraphernalia; and (3) that the defendant intended to use that object for at least one of the illicit purposes enumerated in the statute. Cf. Model Drug Paraphernalia Act comments art. II.[12]

According to Tennessee Code Annotated section 39-17-424, the State may introduce evidence of the defendant's prior convictions for any violation of any state or federal law relating to controlled substances, but only for the limited purpose of establishing the second element of the offense, *i.e.*, to determine "whether a particular object is drug paraphernalia as defined by [section] 39-17-402." Although the trial court believed that Rule 404(b) was not applicable in this case because the evidence of prior crimes was being offered merely "to characterize some item" as drug paraphernalia, "[w]here the evidence of other crimes, wrongs, and acts *may reflect* upon the character of the accused, the procedure set forth in Rule 404(b) should be followed, even though the evidence is offered to prove a material fact not necessarily related directly to the accused." DuBose, 953 S.W.2d at 655 (emphasis added). Because the evidence of other drug convictions reflected upon the character of the appellant, Rule 404(b) governed the procedures for its admission. Therefore, when examined in this context, the trial court had an obligation to hold a hearing outside of the presence of the jury to determine the following issues: (1) whether the evidence of the prior drug offenses was relevant to some material issue "other than conduct conforming with a character trait," Tenn. R.

---

[12]   In relevant part, these comments read as follows:

Section *A* makes it a crime to: (i) possess an object; (ii) classifiable as drug paraphernalia; (iii) with the intent to use that object, essentially, to produce, package, store, test or use illicit drugs in violation of the Controlled Substances Act of the State. Section *A* does not make the mere possession of an object capable of use as drug paraphernalia a crime. Section *A* does not make the mere intent to violate the drug laws a crime. It is the possession of drug paraphernalia accompanied by an intent to use it to violate the drug laws that Section *A* forbids. Innocent citizens have nothing to fear from Section *A*.

Evid. 404(b)(2); (2) whether the probative value of that evidence was outweighed by the danger of unfair prejudice, Tenn. R. Evid. 404(b)(3); and (3) whether the proof establishing that the defendant committed the prior crimes is shown by clear and convincing evidence, State v. Parton, 694 S.W.2d 299, 303 (Tenn. 1985).

Based on our *de novo* review of the record,[13] we conclude that the appellant's prior convictions for possession of cocaine and drug paraphernalia were improperly admitted into evidence. We have often noted that "in a criminal trial[,] evidence that the defendant has committed some other crime wholly independent of that for which he is charged, even though it is a crime of the same character, is usually not admissible because it is irrelevant." See, e.g., Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980); State v. Rickman, 876 S.W.2d 824, 829 (Tenn. 1994) (stating that "the general rule, which excludes evidence of other crimes or bad acts as irrelevant and prejudicial when the defendant is on trial for a crime or act of the same character, remains sound"). Nevertheless, where the prior crime "is relevant to some matter actually in issue in the case on trial and if its probative value as evidence of such matter in issue is not outweighed by its prejudicial effect upon the defendant, then such evidence may be properly admitted." Bunch, 605 S.W.2d at 229. Because the statute itself proposes an "other purpose" for the admission of prior convictions in this case, *i.e.*, to show that the object possessed by the appellant was classifiable as drug paraphernalia, we will assume, without deciding, that the requirements of Rule 404(b)(2) were met by the State in this case. We cannot agree, however, that the probative value of these convictions in this regard outweighed the prejudicial effects as required by Rule 404(b)(3).

Whatever probative value these former convictions possessed as evidence relevant to whether an object is properly classified as drug paraphernalia, we conclude that it was so minimal as to be all but trivial.[14] Indeed, we can conceive of only one circumstance in which evidence of prior crimes would have any probative value whatsoever on this issue: to show that the object at issue is *capable of being used* as drug paraphernalia, as evidenced by the defendant's convictions for uses of the same or similar objects for illicit purposes. At the trial of this case, however, the State only introduced the judgments of conviction without introducing the underlying facts of any conviction to help

---

[13] Because the trial court in this case did not hold a full evidentiary hearing to determine the admissibility of the appellant's prior convictions under the requirements of Rule 404(b), our review of the admissibility of this evidence is *de novo* upon the record. See DuBose, 953 S.W.2d at 652-53.

[14] At the trial of this case, the State did not any offer any reason for admission of the appellant's prior convictions other than that contemplated by section 39-17-424. Consequently, we address the probative value of the evidence based only upon this theory of the case.

Even more problematic for the State, however, is the fact that the appellant admitted during his testimony that the glass pipe may be properly classified as drug paraphernalia, thereby removing *any* need to introduce his prior convictions at all under section 39-17-424. Because "evidence that the defendant committed another crime is admissible only if the ground for relevance is actually being contested in the case on trial," Bunch, 605 S.W.2d at 230, the appellant's concession shattered what little relevance the evidence otherwise possessed at the time of its admission. However, at the time of the appellant's motion in limine to exclude the evidence of his prior crimes, this element of the crime had yet to be conceded, and therefore, in determining whether this evidence was properly admissible in the first instance, we will confine our inquiry to the facts known by the trial court during the hearing on the appellant's motion.

establish that a glass pipe, as evidenced by these convictions, is capable of being used as drug paraphernalia. Moreover, even under this strained theory of relevance, the modicum of probative value possessed by the evidence of prior convictions in this case was further diminished by the testimony of Officer Prestininizi, who indicated that, given his experience as a narcotics officer, he immediately recognized the glass pipe as something "used for smoking crack." See State v. Duncan, 698 S.W.2d 63, 69 (Tenn. 1985) (recognizing that the probative value of a photograph in establishing the wounds of the victim was diminished when other evidence, such as the detailed testimony of the medical examiner, established the same fact). Consequently, because the State could not connect the prior convictions with anything related to the present case, and because other proof greatly reduced the need for the prior convictions, we conclude that the probative value of the judgments of conviction was trivial at best.

Balanced against the trivial probative value of this evidence is the substantial danger of unfair prejudice resulting from the admission of the appellant's prior convictions for similar offenses. This Court has emphasized that "[i]n most cases, a real probability exists that the jury could be overwhelmed by the sheer volume of prejudicial evidence and that the jury could be tempted to convict based upon a defendant's propensity to commit crimes rather than convict solely upon evidence relating to the charged offense." Spicer v. State, 12 S.W.3d 438, 448 (Tenn. 2000); Parton, 694 S.W.2d at 302 (noting the "obvious prejudice" of proof of other similar crimes). Indeed, a significant similarity between the past crime committed and current crime charged increases the likelihood that "a jury would convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense." See Theus v. State, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992); State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999) (noting the same with respect to use of prior convictions for impeachment). Because the appellant's prior offenses were substantially similar to the offense charged in this case, the danger of unfair prejudice in this case was significant.

Because the test of Rule 404(b) is one of balance, when evidence of prior acts is highly probative of a material issue at trial, the chance of *unfair* prejudice to the defendant is correspondingly diminished. See DuBose, 953 S.W.2d at 655 (Tenn. 1997); see also State v. Nesbit, 978 S.W.2d 872, 893 (Tenn. 1998); State v. Hall, 958 S.W.2d 679, 70 (Tenn. 1997). Nevertheless, "[t]he starting point in considering testimony regarding prior offenses, when offered as substantive evidence of guilt and not merely for purposes of impeachment, is a rule of exclusion," State v. Rounsaville, 701 S.W.2d 817, 820 (Tenn. 1985), and we are unpersuaded that the balance in this case even comes close to tipping the scales in favor of admission. In fact, there can be no doubt that the trivial weight of probative value possessed by the evidence was completely overcome by the danger of unfair prejudice. We hold, therefore, that the evidence of the appellant's prior crimes was inadmissible under Rule of Evidence 404(B).

We note that the inherent conflict present in any application of section 39-17-424(2) is well illustrated by the circumstances of this case. If the state elects to introduce evidence of prior convictions to prove that an object is classifiable as drug paraphernalia, it must show that the prior convictions were virtually identical to the present charge to have any logical relevance whatsoever. However, in making such a showing, the state will necessarily run the substantial risk that the

prejudicial effects flowing from that evidence will outweigh this minimal probative value. Trial courts are well advised to carefully consider this conflict when deciding whether to admit evidence of the defendant's prior convictions for the purposes outlined in section 39-17-424.

## HARMLESS ERROR ANALYSIS

Having found that the evidence of the appellant's prior crimes was inadmissible in this case to prove whether the glass pipe was properly classifiable as drug paraphernalia, we must now determine whether that error was harmless. Rule of Criminal Procedure 52(a) provides that "[n]o judgment of conviction shall be reversed on appeal except for errors which affirmatively appear to have affected the result of the trial on its merits." See also Tenn. R. App. P. 36(b); State v. Neal, 810 S.W.2d 131, 139 (Tenn. 1991). Because "the goal of harmless error analysis is to identify the actual basis on which the jury rested its verdict," Momon v. State, 18 S.W.3d 152, 168 (Tenn. 1999), we have frequently held that "[t]he line between harmless and prejudicial error is in direct proportion to the degree of the margin by which the proof exceeds the standard required to convict beyond a reasonable doubt," see, e.g., State v. Gilliland, 22 S.W.3d 266, 274 (Tenn. 2000); State v. Carter, 714 S.W.2d 241, 248 (Tenn. 1986) (citing Delk v. State, 590 S.W.2d 435, 442 (Tenn. 1979)). Accordingly, when looking to the effect of an error on the trial, we will evaluate that error in light of all of the other proof introduced at trial. "The more the proof exceeds that which is necessary to support a finding of guilt beyond a reasonable doubt, the less likely it becomes that an error affirmatively affected the outcome of the trial on its merits." Gilliland, 22 S.W.3d at 274.

After a careful review of the record, we conclude that the evidence of guilt in this case, while sufficient for conviction, was clearly not overwhelming. The State introduced no evidence other than the testimony of the two arresting officers, and at its most basic level, the trial represented a credibility contest between the two officers and the appellant, whose own credibility was certainly diminished by evidence of his prior convictions for similar crimes. In fact, the danger that the jury considered this evidence of prior crimes to assess the appellant's credibility was almost guaranteed as the trial court's "limiting" instruction actually told the jury that this evidence "goes to credibility." Cf. State v. Williams, 977 S.W.2d 101, 106 (Tenn. 1998) ("It is an elementary principle of law that jurors are presumed to follow the instructions of the trial court."). Because the evidence was only marginally relevant to establish the nature of the glass pipe, and because the court erroneously instructed the jury to consider the prior crimes as evidence of the appellant's credibility, the submission of these prior offenses worked to bolster the credibility of the State's witnesses by significantly diminishing that of the appellant. Cf. Mixon, 983 S.W.2d at 675.

In addition to instructing the jury to consider the prior convictions as evidence of the appellant's credibility, the court's limiting instructions were also inadequate to confine the jury to the very limited purpose for which the evidence could actually be introduced. Although section 39-17-424 permitted this evidence only to show that the glass pipe may be objectively classifiable as drug paraphernalia, the court instructed the jury to consider the prior convictions as evidence of the appellant's "knowledge" of the object's use as drug paraphernalia. However, because the defendant's *knowledge* of the object's use is irrelevant as far as section 39-17-424 is concerned, the

instruction was misleading at best, and it represented an inaccurate statement of the law as far as the proper use of the prior convictions was concerned. At worst, the instruction invited the jury to infer the appellant's intent to use the object for drug purposes merely because he "knew" of the object's use and because he actually used similar objects in the past. This chain of logical inferences is precisely that prohibited by Rule 404(b). Therefore, because the evidence presented by the State was clearly not overwhelming, and because the limiting instructions given by the court were erroneous and invited the jury to consider the appellant's propensity to commit crimes, we hold that the improper admission of the appellant's prior convictions affirmatively appears to have affected the outcome of the trial on its merits. Accordingly, we conclude that a new trial is required to ensure that this verdict was not the result of unfair prejudice.

## CONCLUSION

In summary, we hold that the legislature did not intend for Tennessee Code Annotated section 39-17-424 to admit evidence that is otherwise inadmissible under the Rules of Evidence, and we hold that the evidence of the appellant's prior convictions was not properly admissible under Tennessee Rule of Evidence 404(b). Because we further conclude that the error in this case affirmatively appears to have affected the outcome of the trial, we remand this case to the Rutherford County Circuit Court for a new trial. The judgment of the Court of Criminal Appeals is reversed.

Costs of this appeal are assessed to the appellee, the State of Tennessee.

_____
WILLIAM M. BARKER, JUSTICE

-16-