# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### January 11, 2005 Session

## STATE OF TENNESSEE v. RAYMOND BAILEY

**Appeal from the Criminal Court for Shelby County**
**No. 02-04607      Chris Craft, Judge**

---

**No. W2004-00512-CCA-R3-CD  - Filed May 20, 2005**

---

The Appellant, Raymond Bailey, was convicted by a Shelby County jury of especially aggravated kidnapping and carjacking.  Following a sentencing hearing, Bailey was sentenced to consecutive sentences of twenty-eight years for especially aggravated kidnapping and twelve years for carjacking. On appeal, Bailey raises the following issues: (1) whether the evidence was sufficient to support the verdicts; (2) whether the trial court erred in allowing the introduction of undisclosed evidence; (3) whether the trial court erred in allowing the State to present evidence of his drug possession at the time of his arrest; (4) whether Bailey's sentences violate *Blakely v. Washington*; and (5) whether the cumulative errors require a new trial.  After review of the record, we conclude that issues (1), (2), (4), and (5) are without merit.  With regard to issue (3), we conclude that the trial court erred in admitting the evidence but conclude that the error was harmless.  Accordingly, the judgment of the trial court is affirmed.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

DAVID G. HAYES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J. C. MCLIN, JJ., joined.

C. Anne Tipton, Memphis, Tennessee, Attorney for the Appellant, Raymond Bailey.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Betsy Carnesale, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## Factual Background

On October 11, 2001, at approximately 9:30 p.m., Beverly Grice dropped off her acquaintance "Mookie" Golstein at a bus stop between Camelia and Somerville on Crump in Memphis. As Golstein stood outside the opened passenger door thanking Grice for the ride, the Appellant ran down a hill beside the car and jumped inside. The Appellant held a gun to Grice's neck and shouted, "Bitch, drive." The victim drove approximately fifty to seventy-five feet before stopping her vehicle at a red light. At that point, the Appellant ordered the victim to pass her purse to him and turn on the interior lights. The victim nervously struggled to turn on the lights and eventually pulled down the passenger side sun visor, which activated a light on the visor. While the Appellant was rummaging through Grice's purse with the gun on his left leg, the victim attempted to grab the gun, and a struggle ensued. The victim then jumped out of the car and ran through Lamar Terrace Apartments to a store and called 9-1-1. Grice described the perpetrator as a five foot four inch tall black male around twenty-four years old with gold teeth.

Memphis Police Officer Felicia Ship arrived at the scene at approximately 9:50 p.m. and spoke with the victim. Grice described the perpetrator as a five foot three inches tall, twenty-one to twenty-five years old, medium complected black male, weighing 150 pounds. She advised that he was wearing a hooded jacket and blue jeans and had four gold teeth.

Several days later Grice's wrecked 1998 Oldsmobile Intrigue was recovered and impounded for fingerprinting. No prints of value were lifted from the vehicle. After regaining possession of her vehicle, a cell phone was found in the car, which she took to Sergeant Pearlman. The phone's ownership was traced to William Isom. Isom could not explain why his phone was inside Grice's car and claimed that his phone had been stolen in a robbery the week before. Subsequently, Pearlman included a picture of Isom in a photospread presented to the victim, and the victim confirmed that the carjacker's photograph was not included in the photospread.

Grice saw her assailant several weeks after the carjacking when she was picking up her goddaughter at the home of Stella Wells, the girl's grandmother. That night she attempted to contact Sergeant Joseph Pearlman, who was the officer with the Robbery Bureau of the Memphis Police Department assigned to her case, but Pearlman's office was closed. On the following Monday, Grice met with Pearlman and told him that she could arrange for her assailant to come to Wells' home again. On November 1, 2001, Sergeant Pearlman waited in his car in the housing project where Wells lived, and apprehended the Appellant as he entered Wells' home, and transported him to 201 Poplar for questioning. Pearlman took Polaroid photos of the Appellant, and the victim indicated that the Appellant was indeed her assailant by writing on the photo, "this is the guy that carjacked me."

At trial, the victim described her assailant as a black man with dark skin, trimmed facial hair along his jaw line, a low haircut, and at least four gold teeth. She testified that on November 1,

2001, he was wearing a light colored camouflage sweatshirt with a hood which he removed from his head after entering her car. She subsequently identified the Appellant in the courtroom, stating that she recognized his face and his voice although he had gained weight and no longer had gold teeth.

At trial, the Appellant relied upon the defense of alibi; however, he chose not to testify. Roderick Alexander, the Appellant's cousin, testified that he was with the Appellant at the home of Marvin Owens and Stephanie Evans from around 4:00 p.m. until at least midnight on October 11, 2001, while repairing the Appellant's Cadillac. Owens and Evans confirmed that the Appellant was present at their home during this time period.

The jury returned guilty verdicts of especially aggravated kidnapping and carjacking as indicted. Following a sentencing hearing, the trial court imposed consecutive sentences of twenty-eight years for especially aggravated kidnapping and twelve years for carjacking. This appeal followed.

**Analysis**

**I. Sufficiency of the Evidence**

The Appellant argues that the evidence in this case was insufficient to support his convictions because the State failed to prove his identity as the perpetrator. We apply the rule that where the sufficiency of evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 433 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). The scope of our examination of the evidence is not equivalent to that of the jury's. In a challenge to the sufficiency of the evidence, this court does not retry the defendant. We emphasize that our examination in a sufficiency review is not to revisit inconsistent, contradicting, implausible, or non-credible proof, as these issues are resolved solely by the jury. *See State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Rather, we look to the record to determine whether there was substantive probative evidence to support the verdict. The second inquiry, the question of legal sufficiency, then follows: whether the record contains evidence from which the jury could have found the essential elements of the crime beyond a reasonable doubt. Every reasonable hypothesis of innocence need not be dispelled; it is only necessary that there exists proof which supports the elements of the crime. The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given to the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

The Appellant argues that the only direct evidence connecting him with the crimes is the victim's eye-witness identification, which he asserts is unreliable. He contends that, although the physical descriptions of the Appellant given by the victim to the 9-1-1 operator and the responding police officer are virtually the same, they differ significantly from the general appearance of the

Appellant both upon his arrest and at trial. In her initial reports, the victim described her assailant as being five feet three inches to five feet four inches tall, twenty-one to twenty-five years old, approximately 150 pounds in weight, and having gold teeth. At trial, the information from police records at the time of his arrest reflects that the Appellant was five feet eight inches tall, weighed 185 pounds, was thirty-two years old, and had no gold teeth. Sergeant Pearlman testified that it is commonly known that "many times people have caps, gold teeth caps, that they can just take in and out." The record reflects that the victim positively identified the Appellant on three separate occasions: at the time of his arrest, at the preliminary hearing, and at trial. At trial, the victim admitted that the incident occurred at night and that there was little lighting. She stated, however, she "got a very good look" at the Appellant's face for "seconds." The Appellant testified that despite the fact that the Appellant no longer had gold teeth, she recognized the Appellant as the perpetrator "immediately" upon seeing him at the home of Stella Wells by "that voice and then that face. Like I said, I will never forget that face." During cross-examination, the victim remained steadfast in her positive identification of the Appellant as her assailant.

The jury resolves questions of fact regarding the identification of a defendant as the person who committed the crime for which he is on trial. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993) (citing *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)). The testimony of a victim alone is sufficient to establish identity. *State v. Williams*, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981). "Inconsistency, inaccuracy and omissions in the description of a defendant by a witness who is otherwise able to positively identify the defendant are questions for the jury in determining the weight to be given the testimony." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999). We will not alter a jury verdict unless the inaccuracies or inconsistencies are so improbable or unsatisfactory as to create a reasonable doubt of the appellant's guilt. *Id*. By returning a guilty verdict, the jury in this case concluded that the Appellant was indeed the person who committed the crimes. The victim's testimony is not so unsatisfactory or improbable as to create a reasonable doubt as to the Appellant's guilt. Therefore, we find the evidence sufficient to convict the Appellant of especially aggravated kidnapping and carjacking.

## II. Undisclosed Evidence

Next, the Appellant contends that the trial court erred in permitting the introduction of undisclosed evidence. At trial, Reginald Grice, the husband of the victim, testified that when the Appellant was being escorted into the courtroom at the general sessions preliminary hearing, the Appellant made eye contact with his wife and moved his hand across his throat in a slashing motion. Deputy David Mays testified, "I brought Mr. Bailey into the holding area inside the courtroom. I noticed he was making motions out into the crowd, out into the audience at someone in the audience." Having detected this action, Mays testified that he told the Appellant to stop, but several minutes later, the Appellant again made the motion across his throat, this time "mouthing the words, I'll kill you." Mays stated he immediately escorted the Appellant to a holding cell in the back of the courtroom. The Appellant's threatening actions resulted in a motion to increase bond at the preliminary hearing, which was granted.

During motion hearings on the morning of the scheduled trial, the State informed the Appellant of its intent to introduce proof of the Appellant's threatening gestures at the preliminary hearing. After hearing a narration of the evidence sought to be introduced, the trial court found the proffered evidence relevant to the issues of identification and as a threat or intimidation of a witness. In granting its admission, the trial court instructed that defense counsel would be given the opportunity to interview both Reginald Grice and Mays before the State called them as witnesses.

The Appellant's challenge to the introduction of the threatening gesture evidence is two-fold. First, he contends that its introduction violated Rule 16, Tenn. R. Crim. P., and *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1968). Rule 16 provides:

> Upon request of a defendant the State shall permit the defendant to inspect and copy or photograph: . . . the substance of any oral statement which the State intends to offer in evidence at the trial made by the defendant whether before or after arrest *in response to interrogations by any person then known to the defendant to be a law enforcement officer*.

Tenn. R. Crim. P. 16(a)(1)(A) (emphasis added).

Because neither the statement "I'll kill you" nor the threatening gestures were made in response to interrogations by a law enforcement officer, they are not governed by Rule 16. Indeed, Rule 16(a)(2) specifically provides that statements to state witnesses are not subject to disclosure through pretrial discovery. Moreover, the Appellant's argument of a *Brady* violation fails because *Brady* requires only the disclosure of exculpatory evidence, *i.e.*, evidence tending to establish a criminal defendant's innocence. *Brady*, 373 U.S. 83 at 87, 83 S. Ct. 1196-97. Here, the evidence is inculpatory, as it reflects the Appellant's intimidation of a witness' prosecution of the case and identification of the Appellant.

In his second challenge, the Appellant contends that the evidence was erroneously introduced "through witnesses undisclosed to the defense." Although no specific discovery rule or statute is identified by the Appellant as a basis for his argument, Tennessee Code Annotated section 40-17-106 (2003) governs "the duty of the district attorney general to endorse on each indictment or presentment, at the term at which the same is found, the names of such witnesses as the district attorney general intends shall be summoned in the cause, and sign such indictment or presentment name thereto." However, this duty is directory and does not in and of itself disqualify a witness from testifying. *See State v. Harris*, 839 S.W.2d at 69. Relief is required only upon a showing of prejudice, bad faith, or undue advantage. *Id*. In this case, the Appellant cannot claim surprise, as he was the party responsible for the threatening gesture at the preliminary hearing. Moreover, the gesture was recorded as a result of a hearing for an increase in the Appellant's bond. Although the State failed to comply with the provisions of Tennessee Code Annotated section 40-17-106, we conclude that the trial court's fashioned remedy, in the absence of any showing of bad faith on the part of the State, did not require exclusion of the witnesses.

## III. Evidence of Other Crimes

The Appellant contends that the trial court improperly admitted evidence, in violation of Tennessee Rule of Evidence 404(b), that he possessed 2.4 grams of crack cocaine at the time of his arrest three weeks after the offense occurred.[1] Sergeant Pearlman testified that after the Appellant was arrested on November 1, 2001, and was waiting alone in an interview room, a camera captured him removing a bag containing 2.4 grams of crack cocaine from his sock.

Tennessee Rule of Evidence 404(b) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing inquiry on cross-examination about specific instances of conduct are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). The court must also determine that the defendant committed the crime by clear and convincing evidence. *State v. Parton*, 694 S.W.2d 299, 303 (Tenn. 1985).

After conducting a hearing outside the presence of the jury, the trial court found clear and convincing evidence of the Appellant's possession of crack cocaine at the time of his arrest and followed the procedure for admitting evidence under Rule 404(b). The court concluded, "I think that the jury would be entitled to consider the defendant's drug uses as a possible motive for [carjacking]. So under those circumstances, it's - - admittedly it's almost a tie. . . . I really can't say that the probative value is outweighed. . . . I'm going to have to let it in." However, the court instructed the jury that it could consider this evidence for motive only. Given that the trial court followed proper procedural protocol in its determination, we must give this decision great deference and only reverse for an abuse of discretion. *State v. Dubose*, 953 S.W.2d 649, 652 (Tenn. 1997).

Although Rule 404(b) bars the admission of evidence of prior crimes and wrongs to prove character, it does allow such evidence for other purposes. Such purposes include motive, intent, identity, the absence of mistake or accident, or the existence of a larger continuing plan. *State v. Gilliland*, 22 S.W.3d 266, 271 n.6 (Tenn. 2000) (citing *Bunch v. State*, 605 S.W.2d 227, 229 (Tenn.

---

[1]The Appellant was never indicted or charged for drug possession.

1980)).  Clearly, the Appellant's involvement in the carjacking and kidnapping did not arise from the same criminal episode as his possession of crack cocaine, which occurred three weeks later.  We conclude that the trial court's admission of this evidence to prove motive is speculative at best.  Our examination of the record reveals no direct or indirect evidence that the Appellant committed the offenses to obtain drug funds.  Accordingly, we conclude that the admission of drug possession was error.

Violation of a rule of evidence may not require  reversal if the error "was more probably than not harmless."  *State v. James*, 81 S.W.3d 751, 763 (Tenn. 2002).  This court will not reverse a conviction "except for errors which affirmatively appear to have affected the result of the trial on the merits."  Tenn. R. Crim. P. 52(a).  We evaluate error in light of all other proof introduced at trial.  *State v. Mallard*, 40 S.W.3d 473, 489 (Tenn. 2001).  Our review of the record establishes that the evidence in this case was more than sufficient to support a guilty verdict without testimony concerning the Appellant's drug possession.  We conclude that the evidentiary error did not affirmatively affect the outcome of the trial on the merits.

## IV.  Sentencing

The Appellant argues that the trial court's imposition of enhanced sentences and imposition of consecutive sentences violate his Sixth Amendment right to trial by jury as recognized by the Supreme Court's holding in *Blakely v. Washington*, 542 U.S. _____, 124 S. Ct. 2531 (2004).  At oral argument, the Appellant withdrew his challenge to the length of his sentences under *Blakely* because the sentences imposed were less than the "statutory maximum" as defined by *Blakely*.[2]  Accordingly, we limit our review to the challenged imposition of consecutive sentences under *Blakely*.  First, we would note that this issue is waived because it was not raised by the Appellant at the sentencing hearing.  *See State v. Edwin Gomez and Jonathan S. Londono*, M2002-01209-SC-R11-CD (Tenn. Apr. 15, 2005), *pet. for reh-g filed*, (Apr. 20, 2005).  Moreover, our supreme court held in *Gomez* that the Sentencing Reform Act of 1989 does not violate the Sixth Amendment guarantee of a jury trial and was, thus, not affected by the *Blakely* decision.  *Id.*  Accordingly, this issue is without merit.

## V.  Cumulative Error

Lastly, the Appellant argues that the cumulation of errors requires reversal.  This argument must fail because we have found only one error, which we have concluded was harmless.  Accordingly, we find this issue without merit.

---

[2]As a Range II offender, the Appellant was sentenced to twenty-eight years for the class A felony of especially aggravated kidnapping and was sentenced to twelve years for the class B felony of carjacking.  The presumptive sentence for Range II carjacking is twelve years, and the presumptive minimum for Range II especially aggravated kidnapping is 37.5 years, being the midpoint range for a class A felony.  We would agree that these sentences did not violate *Blakely*.

## CONCLUSION

For the foregoing reasons, the judgment of the Criminal Court of Shelby County is affirmed.

_____
DAVID G. HAYES, JUDGE