IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 4, 2003 Session

## STATE OF TENNESSEE v. JAMIE LOU HANELINE

**Direct Appeal from the Circuit Court for Decatur County**
**No. 01-CR-013      C. Creed McGinley, Judge**

_____

**No. W2002-01773-CCA-R3-CD  - Filed May 30, 2003**

_____

The Defendant, Jamie Lou Haneline, was convicted by a jury of one count of rape of a child. Following a sentencing hearing, he was sentenced to thirty-eight years in the Department of Correction.  In this direct appeal, the Defendant raises three issues: (1) whether the evidence is sufficient to support his conviction; (2) whether the trial court erred by admitting the testimony of a police officer regarding a statement made by the Defendant; and (3) whether the trial court erred by enhancing the Defendant's sentence based upon the offense having been committed to gratify the Defendant's desire for pleasure or excitement.  Finding no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Daniel J. Taylor, Jackson, Tennessee, for the appellant, Jamie Lou Haneline.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Robert Radford, District Attorney General; and John Overton, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

K.G.,[1] the victim in this case, testified that she first met the Defendant when she was eleven years old.  The twenty-three year old defendant was a friend of K.G.'s mother's boyfriend.  In February of 2000, shortly after they met, the Defendant began to flirt with K.G., and he asked her to have sex with him.  However, their sexual intimacy did not begin at this point.  Although the Defendant moved to Pennsylvania for a period of a few months, their relationship resumed in August

_____
[1]We shall refer to the minor victim in this case by her initials.

when the Defendant returned. At this point in time, K.G. was twelve years old. K.G. testified that, on September 9, 2000, she needed school supplies from a Wal-Mart store. The Defendant offered to take K.G. to the store, which he did. However, when they left Wal-Mart, the Defendant took K.G. to his residence, a mobile home that he shared with his grandfather, Byron Bean. K.G. testified that the Defendant "snuck" her into the mobile home after Mr. Bean went to bed. She stated that the Defendant took her to his bedroom, flirted with her, and had sex with her twice. In addition, K.G. performed oral sex on the Defendant when he asked her to. The Defendant used a condom because "he was afraid [she would] get pregnant." After this incident, the Defendant took K.G. home.

On September 23, 2000, K.G. was attending a birthday party at the house of her friend, Amy Cole. The Defendant picked her up from the party at around 8:00 p.m. K.G. testified that they drove around for a while, after which the Defendant took her to his mobile home. Again, K.G. waited outside until Mr. Bean went to bed; then the Defendant took her to his bedroom. In the bedroom, K.G. and the Defendant watched television and had sexual intercourse again. The Defendant used a condom on this occasion as well. Early the next morning, the Defendant took K.G. back to Amy Cole's house.

With respect to the incident on September 23, 2000, Amy Cole testified that the Defendant picked K.G. up from the birthday party after dark. After a few hours, the Defendant returned K.G. to the house, where she spent the rest of the night.

K.G. testified that, a few days later, on approximately September 30, 2000, the Defendant unexpectedly came to her house. K.G. was there alone. She stated that she and the Defendant had sex on her bed on this occasion.

Some time after this last incident, the Defendant returned to K.G.'s house. K.G.'s grandfather, who was at the house with K.G., refused to allow her to leave with the Defendant. K.G. became upset with her grandfather and attempted to commit suicide by taking a bottle of pain medicine. She was taken to the hospital, where her stomach was pumped. This experience prompted K.G. to disclose to her mother her relationship with the Defendant.

The jury found the Defendant guilty of the child rape that occurred on September 23, 2000. It found him not guilty of the conduct alleged to have occurred on September 9 and September 30.

First, the Defendant argues that the evidence presented at trial is insufficient to support his conviction for rape of a child. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden

of showing that the evidence was insufficient. <u>See</u> <u>McBee v. State</u>, 372 S.W.2d 173, 176 (Tenn. 1963); <u>see also</u> <u>State v. Buggs</u>, 995 S.W.2d 102, 105-06 (Tenn. 1999); <u>State v. Evans</u>, 838 S.W.2d 185, 191 (Tenn. 1992); <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." <u>Tuggle</u>, 639 S.W.2d at 914; <u>see also</u> <u>Smith</u>, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. <u>Evans</u>, 838 S.W.2d at 191; <u>see also</u> <u>Buggs</u>, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. <u>See</u> <u>Tuggle</u>, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. <u>See</u> <u>State v. Morris</u>, 24 S.W.3d 788, 795 (Tenn. 2000); <u>State v. Pappas</u>, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

"Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). Sexual penetration is defined in our criminal code as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body…but emission of semen is not required." <u>Id.</u> § 39-13-501(7). K.G. testified that, on September 23, 2000, she was at the house of her friend, Amy Cole, for a birthday party. At about 8:00 that evening, the Defendant picked up K.G. at Ms. Cole's house. K.G. testified that they drove around for approximately two hours, after which they went to the Defendant's residence. K.G. waited outside until the Defendant's grandfather went to bed; then she went inside the trailer. Once inside, she and the Defendant went to his bedroom and watched television. K.G. testified that the Defendant asked her to have sex with him, and she agreed. She and the Defendant engaged in vaginal sex in his bedroom. Eventually, K.G. and the Defendant left the mobile home, and he took her back to Amy Cole's house. K.G. testified that she arrived back at Ms. Cole's house at approximately 2:00 a.m. Likewise, Amy Cole testified that she had a birthday party at her house on September 23, 2000, which was Saturday. K.G. attended the party and was to spend the night at Ms. Cole's house. Ms. Cole testified that K.G. left the party with the Defendant sometime after dark. She stated that K.G. was gone for approximately three to four hours. K.G. spent the rest of the night at Amy Cole's house after the Defendant brought her back.

In support of his argument that the evidence is insufficient to support his conviction for child rape, the Defendant cites discrepancies in the testimony regarding, among other things, whether he ever stayed at K.G.'s house with her and her mother, whether he and K.G.'s mother were ever romantically involved, whether he and K.G. ever had sex in his car or in an abandoned house, and how long K.G. was away from Amy Cole's house. Furthermore, the Defendant points out that K.G. admitted during her testimony that she had once threatened to falsely accuse her mother's ex-boyfriend of raping her. Finally, the Defendant cites to the testimony of several of his witnesses who testified that the Defendant routinely picks up his daughter on Fridays for weekend visits and eats dinner with his family most every night.

The crux of the Defendant's challenge to the sufficiency of the evidence is that the testimony of K.G. was contradicted on several points and therefore is not credible. However, the argument that the testimony of a witness cannot support a conviction due to its lack of credibility must fail. We reiterate that all questions involving the credibility of witnesses are to be resolved by the trier of fact, not the appellate courts. See Morris, 24 S.W.3d at 795. If there are conflicts in the trial testimony, this Court must resolve them in favor of the jury verdict. See Tuggle, 639 S.W.2d at 914. Furthermore, evidence is sufficient if, in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. at 319; Smith, 24 S.W.3d at 278. Based on the testimony of K.G. and Amy Cole, a rational juror could have found beyond a reasonable doubt that, on September 23, 2000, the Defendant picked up K.G. from the party at Amy Cole's house, took her to his residence, and committed an unlawful sexual penetration of K.G., who was less than thirteen years old. Therefore, this issue is without merit.

The Defendant also argues that the trial court erred by admitting the testimony of a police officer regarding a statement made by the Defendant. Specifically, he contends that Officer David Patton should not have been allowed to testify that, when he attempted to detain the Defendant for questioning, the Defendant ran from him and stated, "I'm not going back to jail." The Defendant asserts that this statement referred to then-pending criminal charges, which reference the trial court had disallowed as a result of pre-trial motions in limine. He also maintains that the probative value of this statement was outweighed by the risk of unfair prejudice.

Officer Patton testified that, on October 29, 2000, a deputy sheriff, who had a warrant for the Defendant's arrest, asked him to be on the lookout for the Defendant. Officer Patton stated that he encountered the Defendant at a residence on Pine Valley Road. Officer Patton identified himself and asked the Defendant whether he was Jamie Lou Haneline. The Defendant responded that he was, and the officer said, "I need to speak with you." At this point, the Defendant "took off running." Officer Patton yelled to the Defendant, "You are under arrest," and the Defendant replied, "I'm not going back to jail." Officer Patton had to chase the Defendant, whom he eventually apprehended.

The trial court ruled that the evidence of the Defendant's flight and his statement, "I'm not going back to jail" were admissible. The decision to exclude or admit evidence is left to the discretion of the trial court, and this Court may only reverse the trial court's decision if there has been an abuse of discretion. See State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997). First of all, evidence of a Defendant's flight is generally relevant to show consciousness of guilt. See State v. Richardson, 995 S.W.2d 119, 128-29 (Tenn. Crim. App. 1998); State v. Braggs, 604 S.W.2d 883, 886 (Tenn. Crim. App. 1980). The trial court properly instructed the jury that the fact of flight alone does not prove that the Defendant was guilty. The trial court did not abuse its discretion by admitting evidence of the Defendant's flight from Officer Patton.

However, we believe it was error for the trial court to allow Officer Patton to testify as to the Defendant's statement, "I'm not going back to jail." The Defendant argues that the statement was improper under Tennessee Rule of Evidence 404(b), which states, "Evidence of other crimes,

wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Obviously the statement "I'm not going back to jail" implies that the person making the statement has been in jail before, which could constitute evidence of "other crimes, wrongs, or acts" under 404(b). Although Officer Patton did not describe the Defendant's prior convictions or the other charges that were then-pending against the Defendant, the admission of the statement, which was irrelevant to the issue of guilt, was unfairly prejudicial to the Defendant.

We must now determine whether the trial court's error in admitting the Defendant's statement can be classified as harmless. Rule 52(a) of the Tennessee Rules of Criminal Procedure states, "No judgment of conviction shall be reversed on appeal except for errors which affirmatively appear to have affected the result of the trial on the merits." See also Tenn.R.App.P. 36(b). "[T]he goal of harmless error analysis is to identify the actual basis on which the jury rested its verdict." Momon v. State, 18 S.W.3d 152, 168 (Tenn. 1999). "[W]hen looking to the effect of an error on the trial, we will evaluate that error in light of all the other proof introduced at trial." State v. Mallard, 40 S.W.3d 473, 489 (Tenn. 2001). In this case, K.G. testified that the Defendant picked her up from her friend's birthday party and took her to his residence, where they engaged in sexual intercourse. The Defendant then returned K.G. to her friend's house. Her friend, Amy Cole, testified that she observed the Defendant pick up K.G. on the night of her birthday party, and she also testified that he brought K.G. back several hours later. Although the trial judge should have excluded the statement made by the Defendant, we cannot conclude that this error affirmatively appears to have affected the outcome of the trial pursuant to Tennessee Rule of Criminal Procedure 52(a). This issue is without merit.

Finally, the Defendant argues that the trial court erred by enhancing his sentence based upon the offense having been committed to gratify his desire for pleasure or excitement. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the

factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Tennessee Code Annotated section 40-35-114(8) states,

> If appropriate for the offense, enhancement factors, if not themselves essential elements of the offense as charged in the indictment, may include:
> …
> [t]he offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement.

The Defendant was convicted of child rape, a Class A felony. See Tenn. Code Ann. § 39-13-522(b). He was sentenced as a Range II multiple offender. The sentencing range for a multiple offender convicted of a Class A felony is from twenty-five to forty years. See id. § 40-35-112(b)(1). In sentencing the Defendant, the trial judge began with the presumptive sentence, which, for a Class A felony, is the midpoint of the range, see id. § 40-35-210(c), or thirty-two and one-half years in this case. Based upon the "pleasure or excitement" enhancement factor and the Defendant's previous history of criminal convictions, the trial court increased the Defendant's sentence by five and one-half years, resulting in a sentence of thirty-eight years.

The Defendant contends that the State presented no proof that the instant offense "was committed to gratify the defendant's desire for pleasure or excitement." Id. § 40-35-114(8) (Supp. 2002). The trial court cited the use of a condom and the Defendant's ejaculation during intercourse in support of the application of the "pleasure or excitement" enhancement factor. The Defendant correctly points out in his brief that, in State v. Arnett, 49 S.W.3d 250, 262 (Tenn. 2001), our supreme court reiterated that "evidence of ejaculation, by itself, does not prove that the rapist's motive was to gratify a desire for pleasure." However, this Court has held that use of a condom may suggest that the act was undertaken for sexual pleasure. See State v. Delbert Lee Harris, No. 01C01-9705-CC-00177, 1998 WL 670403, at *5 (Tenn. Crim. App., Nashville, Sept. 30, 1998). Furthermore, although not cited by the trial court, there was also evidence that, shortly after the victim met the Defendant, he began "flirting" with her, and they kissed on the mouth. In addition, K.G. testified that the Defendant told her that he was in love with her, and, at the time, she thought that she loved him. In our view, this cumulative evidence supports the application of enhancement factor (8).

However, even if the trial court erred by applying the "pleasure or excitement" enhancement factor, the trial court explained that it placed little weight on this factor. The court placed great weight on factor (2), that the Defendant had "a previous history of criminal convictions…in addition to those necessary to establish the appropriate range." The Defendant's criminal history includes approximately ten felony convictions in addition to ten misdemeanor convictions. The Defendant

does not challenge the application of this enhancement factor, and it alone is sufficient to justify the enhancement of the Defendant's sentence to thirty-eight years. Therefore, this issue is without merit.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE