# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 22, 2012

## STATE OF TENNESSEE v. VICTOR ARMANDO MARTINEZ

**Appeal from the Criminal Court of Davidson County**
**No. 2008-C-2175     Steve Dozier, Judge**

**No. M2010-01820-CCA-R3-CD - Filed December 3, 2012**

Victor Armando Martinez ("the Defendant") appeals his jury convictions for possession with intent to sell twenty-six or more grams of cocaine, simple possession of Alprazolam, possession with intent to sell one-half (1/2) ounce or more but less than ten pounds of marijuana, possession of a firearm in the commission of a dangerous felony, simple possession of diazepam, simple possession of 3,4-Methylenedioxymethamphetamine ("MDMA"), and misdemeanor possession of drug paraphernalia. On appeal, the Defendant asserts that the trial court erred in denying his motion to suppress the evidence obtained as a result of the search of his residence. He also alleges that the evidence presented at trial was insufficient to support his convictions. Finally, the Defendant contends that the trial court erred in applying no mitigating factors in its sentencing of the Defendant. After a thorough review of the record and the applicable law, we affirm the Defendant's convictions and sentences.

## Tenn. R. App. P. 3 Appeal as of Right; Judgments
## of the Criminal Court Affirmed

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P. J., and ALAN E. GLENN, J., joined.

Ronald E. Munkeboe, Jr., Nashville, Tennessee, for the appellant, Victor Armando Martinez.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Victor S. Johnson, III, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

A Davidson County Grand Jury indicted Rafael Martinez ("the co-defendant")[1] and the Defendant ("the defendants") on one count each of the following: possession with intent to sell or deliver twenty-six or more grams of cocaine, a Class B felony; possession with intent to sell or deliver Alprazolam, a Class D felony; possession with intent to sell or deliver one-half (1/2) ounce or more but less than ten pounds of marijuana, a Class E felony; simple possession of MDMA, a Class A misdemeanor; and possession of drug paraphernalia, a Class A misdemeanor. Additionally, the Defendant alone was indicted on one count of possession of a firearm in the commission of a dangerous felony, a Class D felony, and one count of simple possession of diazepam, a Class A misdemeanor.

Prior to the defendants' trial, the Defendant moved to suppress the evidence found as a result of the search of his residence, contending that the detectives lacked valid consent. The trial court held an evidentiary hearing and denied the Defendant's motion to suppress. The Defendant, however, has not included in the record on appeal a transcript of the hearing on the motion to suppress. Instead, he included in the record the exhibits entered into evidence during the suppression hearing, including a signed consent to search form by the Defendant and a copy of an investigative report detailing the events leading to the search and the resulting items found. The defendants were tried together before a jury on April 5, 2010.

*Proof at Trial*

Detective Kevin Guyton, Metropolitan Nashville ("Metro") Police Department Crime Suppression Unit, testified that at times he had worked undercover within the narcotics division of his department. On April 1, 2008, at approximately 9:00 p.m., he responded to 6565 Premier Drive in Davidson County with his supervisor and three other detectives. Detective Guyton explained that the address was an apartment complex. Several minutes after arriving at the complex, he approached apartment A-11 with two of the other detectives. Detective Guyton knocked on the door, and the Defendant answered the door. The detectives identified themselves as police and asked the Defendant about an "obvious odor of burnt marijuana." The Defendant responded that he smoked marijuana and that he had some marijuana cigarettes inside the apartment near his couch. He gave the detectives permission to enter the apartment and showed the detectives the marijuana cigarettes, which were in plain view. Detective Guyton then advised the Defendant of his Miranda rights, and the

---

[1] The co-defendant is the Defendant's brother. At the time of their arrests, they lived at the same residence.

Defendant gave Detective Guyton verbal and written consent to search his residence. During the course of that search, the detectives found numerous narcotics, drug paraphernalia, and a handgun. They found the items primarily in the kitchen and the Defendant's bedroom.

Detective Guyton identified the .9 millimeter handgun he found in plain view in the Defendant's bedroom. Next to the gun was a loaded magazine. Detective Guyton also identified the following items found at the Defendant's residence: three sets of digital scales; a "food saver" bag that contained an "extreme odor of marijuana"; Glad sandwich bags; a marijuana pipe; cigar rolling papers; and a notebook containing phone numbers and other numbers. One of the scales showed a white powder residue on it, indicative of being used to weigh cocaine. The scales were found in the kitchen and bathroom, and the notebook was found in close proximity to the digital scale in the bathroom. Detective Guyton explained that, from his experience, the notebook appeared to be a "drug ledger," which is used to help a drug dealer track the amounts of money that various buyers owe. He noted that the glass pipe contained marijuana residue and that rolling papers commonly are used to roll marijuana cigarettes. He also noted that both the Defendant and the co-defendant's names were written in various locations on the pages.

Detective Guyton identified the following narcotics that were found in the apartment: a pill bottle containing approximately 114 Seroquel pills; a pill bottle containing eight "dan dan" pills; a pill bottle containing approximately nine and a half Xanax pills; a pill bottle containing eleven pills labeled "MP153"; two sandwich bags containing approximately forty Xanax pills; seven marijuana cigarettes, including some that had and had not been smoked; a sandwich bag containing marijuana; a gallon-size bag containing loose marijuana; a sandwich bag containing approximately five grams of marijuana; two more plastic bags containing approximately fifteen grams of marijuana; one small Ziploc-type bag containing one morphine pill, three Valium pills, and two Ecstasy pills; two more plastic bags containing slightly less than two ounces of marijuana; and approximately seventy-six grams of "hard" powder cocaine. Detective Guyton noted that the labels on three of the pill bottles previously had been removed. On the pill bottle containing the Xanax pills, the name "O'Neil" had been scratched out. The detectives field-tested the powder, which tested positive for cocaine.

During the search, Detective Guyton discussed the items that they found with the Defendant. The Defendant told Detective Guyton that he bought himself cocaine and marijuana and that he had obtained the handgun because of a home invasion that had occurred several days prior. Detective Guyton recorded a portion of this conversation, which was played for the jury. According to Detective Guyton, before he started recording but after advising the Defendant of his Miranda rights, the Defendant admitted that he sold drugs, in addition to buying drugs. During the recorded portion, the Defendant admitted to ownership of the narcotics, the drug paraphernalia, and the gun that were found. The Defendant also

explained that the co-defendant had been in Michigan but had returned that day. Detective Guyton denied that the Defendant ever claimed mutual ownership with the co-defendant of the items found. Eventually, the Defendant was transported to booking, and Detective Guyton turned in the property found.

Detective Guyton explained that when cocaine is packaged or found in an amount for personal use, it usually is less than 0.5 grams, which, depending on the current market, would sell for approximately $40. Additionally, a personal amount of marijuana would be approximately one to five grams, which would sell for approximately $10-40. Detective Guyton did not observe anything in the apartment that would lead him to believe that the Defendant was using cocaine.

On cross-examination, Detective Guyton acknowledged that, prior to their knocking on the Defendant's door, he and the other detectives observed the co-defendant and a couple of other individuals leaving the apartment. However, during the course of the search, the Defendant was the only person present who was not affiliated with police personnel.

Officer Chad Barth, Metro Police Department, testified that on April 1, 2008, he stopped the co-defendant's vehicle after receiving a request to do so as part of an investigation. The co-defendant agreed to a search of his person and his vehicle. Officer Barth found nothing in the vehicle but found approximately $2,900 on the co-defendant's person. According to Officer Barth, the co-defendant stated that he had recently sold a car, but Officer Barth was unable to validate that explanation. Officer Barth did not find any drugs or drug paraphernalia as a result of this search.

Isaac Martinez testified that he received evidence and property at Metropolitan Nashville Police Department to deliver to and pick up from the Tennessee Bureau of Investigation ("TBI"). In this case, he followed the police department's standard procedure of ensuring that the police statement matched the evidence and escorting the evidence to the TBI lab with a sergeant. On cross-examination, Mr. Martinez acknowledged that no fingerprint analysis had been requested for the evidence related to this case.

Jacquelyn Poarch, TBI's Nashville Crime Laboratory, testified that on April 18, 2008, she was a forensic technician in the receiving unit. Her responsibilities included entering information from incoming evidence into an information management system and then placing the evidence into a secured vault. In this case, the evidence remained in the vault until Special Agent Jennifer Sullivan, a forensic scientist from TBI's drug unit, retrieved the evidence.

Special Agent Jennifer Sullivan, TBI's Nashville Crime Laboratory, testified as an expert in forensic chemistry. She analyzed various items seized from the Defendant's residence for the presence of controlled substances. She stated that one of the pill bottles contained nine and a half tablets of Alprazolam, which is another name for Xanax, a schedule IV drug. She also identified forty more Alprazolam pills within a few plastic bags. Next, she identified six pills contained within a Ziploc-type bag: three white, round pills were Diazepam or Valium, a schedule IV drug; one white, oblong pill was a non-controlled substance; and two brown pills were MDMA or Ecstasy, a schedule I drug. Special Agent Sullivan tested 135 other tablets and found them to be non-controlled substances. She also identified 50.9 grams of marijuana, a schedule VI drug,[2] and 74.3 grams of cocaine, a schedule II drug.

At this point, the State rested its proof. The defense attorneys for both defendants moved for a judgment of acquittal, and the trial court denied the motion as to both defendants. The co-defendant's counsel then proceeded with his case in chief.

Luis Colon, the brother[3] of the defendants, testified that he did not live with the defendants at the time of their arrests. On April 1, 2008, Luis spoke with the co-defendant over the phone regarding some money that he owed the co-defendant for a maroon Cadillac that he had purchased. He explained that this car was the fifth car that he had bought from the co-defendant. At approximately 1:00 or 2:00 p.m., Luis went to the defendants' residence to leave for the co-defendant a portion of the $3,400 owed. At the time, Colon worked for Encore Automotive, and the co-defendant was employed as a landscaper.

Colon received a call from the co-defendant once the co-defendant was arrested later at a gas station. He acknowledged on cross-examination that he had spoken with both defendants regarding the case. He also agreed that the co-defendant owned a 2004 Escalade worth approximately $20,000-30,000 and a Yukon worth approximately $8,000. Finally, Colon admitted that he only posted bond for the co-defendant and not the Defendant. He noted that the Defendant's girlfriend posted bond for the Defendant and that the Defendant's bond was substantially higher than the co-defendant's bond.

The co-defendant testified that he and the Defendant had lived at 6565 Premier Drive, Apartment A-11, for approximately one year on April 1, 2008. The co-defendant had worked

---

[2] The TBI forensic chemistry report included a note under the 50.9 grams of marijuana listed that stated, "No analysis was performed on additional plant material. The gross weight of this additional plant material is 48.7 grams. The total weight for all the plant material would not exceed 10.0 pounds."

[3] Colon testified that the co-defendant is the oldest brother and that the Defendant is the youngest brother.

as a cook at several different restaurants throughout Nashville. At some point, he began buying cars, letting Luis "fix them up," and selling the cars at an estimated $1,000-$1,200 profit per car. The co-defendant surmised that he sold approximately sixty to seventy cars in four years. In the six months leading up to his arrest, the co-defendant also had started a landscaping business.

On April 1, 2008, the co-defendant arrived at his apartment to find the Defendant on the couch. The Defendant told the co-defendant that he (the Defendant) had taken three Xanax pills. The co-defendant walked upstairs and found the money from Luis on his dresser in his bedroom. He explained that the only person who was at the residence during that time was an individual named Forrest[4] and that Forrest was not there to buy or sell drugs. The co-defendant never was aware of individuals coming to the apartment to purchase or sell cocaine.

The co-defendant stated that he had obtained the maroon Cadillac Deville one to two weeks before his arrest. His agreement with Luis was to sell the vehicle to Luis for $3,400. According to the co-defendant, the money the police found on his person at the time of his arrest was partly the $2,250 from Luis and the rest was from his recent trip to Michigan. He explained that he would have been in Michigan at the time of his arrest but that he had received a call that the Defendant was drunk and "under the influence of something" at the bowling alley. The co-defendant knew that the Defendant smoked marijuana, but he was unaware that the Defendant used pills or cocaine.

The co-defendant's counsel rested its proof, and the Defendant's counsel began his case-in-chief. The Defendant testified that he struggled with "emotional impaired and opposition disorder" but that he was not seeing a physician for his mental issues at the time of trial. As a result of his mental issues, he received social security checks. He used Seroquel pills for sleeping and Xanax pills to "calm [his] nerves." Although the co-defendant did not approve, the Defendant would smoke marijuana inside the apartment when the co-defendant was out of town. Additionally, although the co-defendant had no knowledge of it, the Defendant would use cocaine with friends when the co-defendant was gone. Around the time of his arrest, the Defendant worked nightly from 10:00 p.m. to 6:00 a.m. at Jack in the Box earning $7.50 to $8.00 per hour. He stated that he would "take drugs . . . to work[,] use them as [he] was working[,] and . . . give drugs to [his] manager."

On the day of his arrest, the Defendant was "laying around the apartment getting high." He had been smoking marijuana, taking pills, and watching sports all day. He heard a knock at the door, and he opened the door to several officers who walked in "without

---

[4] The co-defendant never provided Forrest's last name at trial.

asking" and went upstairs. According to the Defendant, the officers instructed the Defendant to sign a citation for the marijuana sitting on the table. He signed the document without reading it and learned later that it was a consent to search authorization.

The Defendant testified that he disagreed with Detective Guyton's testimony because he never sold drugs and never told Detective Guyton that he sold drugs. On cross-examination, the Defendant acknowledged that the detectives confiscated from him $304 in cash. He also acknowledged that he did not have a problem with Detective Guyton and that Detective Guyton was polite to him. The Defendant explained that all of the sets of scales found in the apartment were for the Defendant to weigh his drugs when he bought them. He admitted to ownership of the pills, drugs, and gun that were found at the apartment. He was not aware of anyone coming to his residence that day, except Forrest to speak with the co-defendant.

The defense rested its proof, and the State called Detective Andrae Starling, Metro Police Department, as a rebuttal witness. Detective Starling testified that on April 1, 2008, he was asked to respond to 6565 Premier Drive to set up surveillance of an apartment. He observed two males enter and leave the residence at Apartment A-11. He also remembered encountering the Defendant in a routine traffic stop on February 3, 2008. When Detective Starling stopped the Defendant, the Defendant was driving a 1996 four-door, maroon Cadillac Deville.

At the close of proof, the jury deliberated and convicted the Defendant of possession with intent to sell twenty-six or more grams of cocaine, simple possession of Alprazolam, possession with intent to sell one-half (1/2) ounce or more but less than ten pounds of marijuana, possession of a firearm in the commission of a dangerous felony, simple possession of diazepam, simple possession of MDMA, and misdemeanor possession of drug paraphernalia. The jury found the co-defendant not guilty of possession with intent to sell or deliver twenty-six or more grams of cocaine, simple possession of MDMA, and possession with intent to use drug paraphernalia. The jury convicted the co-defendant, however, of simple possession of Alprazolam and simple possession of marijuana.

The trial court held a sentencing hearing, but the Defendant did not include a transcript of the hearing in the record. According to the judgments included in the record, the trial court sentenced the Defendant to the following: eight years for his conviction of possession with intent to sell twenty-six or more grams of cocaine; eleven months, twenty-nine days for his conviction of simple possession of Alprazolam; one year for his conviction of possession with intent to sell one-half (1/2) ounce or more but less than ten pounds of marijuana; three years for his conviction of possession of a firearm in the commission of a dangerous felony; eleven months, twenty-nine days for his conviction of simple possession

of diazepam; eleven months, twenty-nine days for his conviction of simple possession of MDMA; and eleven months, twenty-nine days for his conviction of misdemeanor possession of drug paraphernalia. The trial court ran all the sentences concurrently to the first conviction except the conviction of possession of a firearm in the commission of a dangerous felony, which the trial court ran consecutively, for an effective sentence of eleven years.

The Defendant filed a motion for new trial, which the trial court subsequently denied. He now appeals, arguing that the trial court erred in denying the motion to suppress the evidence recovered as a result of the search on April 1, 2008. Additionally, the Defendant challenges the sufficiency of the evidence supporting his convictions, as well as his sentences.

## Analysis

### Motion to Suppress

The Defendant argues that the trial court erred in denying his motion to suppress the evidence recovered by detectives as a result of the search on April 1, 2008. Specifically, the Defendant contends that the search lacked valid consent. The State responds that because the Defendant failed to include a transcript of the hearing on the motion to suppress he has waived appellate review of this issue.

The appellant must provide a record which conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). "Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue." State v. Ballard, 855 S.W.2d 557, 560–61 (Tenn. 1993). In such cases, we must presume that the trial court ruled correctly. State v. Ivy, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993); State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). The record provided by the Defendant on this issue does not provide this Court with an appropriate foundation for review. Consequently, the Defendant is not entitled to relief on this issue.

### Sufficiency of the Evidence

Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption

-8-

of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The appellate court does not weigh the evidence anew. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. Id. Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our Supreme Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

The weight and credibility given to the testimony of witnesses, and the reconciliation of conflicts in that testimony, are questions of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Furthermore, it is not the role of this Court to reevaluate the evidence or substitute its own inferences for those drawn by the jury. State v. Winters, 137 S.W.3d 641, 655 (Tenn. Crim. App. 2003) (citations omitted).

### Possession with Intent to Sell Twenty-Six or More Grams Cocaine and One-Half (1/2) Ounce or More but Less Than Ten Pounds of Marijuana

Pursuant to Tennessee Code Annotated section 39-17-417(a) (Supp. 2007), "[i]t is an offense for a defendant to knowingly: (1) Manufacture a controlled substance; (2) Deliver a controlled substance; (3) Sell a controlled substance; or (4) Possess a controlled substance with intent to manufacture, deliver or sell the controlled substance."

Furthermore, "[a] violation of subsection (a) with respect to the following amounts of a controlled substance . . . is a Class B felony and, in addition, may be fined not more than two hundred thousand dollars ($200,000)," including "[t]wenty-six (26) grams or more [but less than three hundred (300) grams] of any substance containing cocaine." Id. § -417(i)(5). Additionally, "[a] violation of subsection (a) with respect to a Schedule IV controlled substance classified as marijuana containing not less than one-half (1/2) ounce (14.175 grams) nor more than ten pounds (10 lbs.) (4535 grams) of marijuana . . . is a Class E felony

and, in addition, may be fined not more than five thousand dollars ($5,000)." Id. § -417(g)(1).

In assessing the purpose for the possession of the controlled substance,

[i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. . . . The inferences shall be transmitted to the jury by the trial judge's charge, and the jury will consider the inferences along with the nature of the substance possessed when affixing the penalty.

Id. § -419 (2006).

Possession, in Tennessee, may be actual or constructive. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). Additionally, one may be in possession (of an item) alone or jointly with others. State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). Constructive possession means to have "the power and intention at a given time to exercise dominion and control over [the contraband] either directly or through others." Shaw, 375 S.W.3d at 903 (quoting State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). This Court has stated, however, that "[t]he mere presence of a person in an area where drugs are discovered is not, alone, sufficient." State v. Bigsby, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000) (citing State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)).

The evidence established at trial that on April 1, 2008, detectives entered the Defendant's residence and, after a search, found, among various other items, 74.3 grams[5] of powder cocaine and 50.9 grams of marijuana. Detective Guyton testified that he and the other detectives also found a notebook containing numbers that, from his experience, appeared to be a "drug ledger." He explained that drug dealers tend to use a similar method in tracking the amounts of money that various buyers owe. Additionally, Detective Guyton identified at trial three sets of scales that were found at the residence. On one of the scales, they found a white powder residue, indicative of a scale used to weigh cocaine.

---

[5] Detective Guyton testified that the detectives found seventy-six (76) grams of powder cocaine, whereas Special Agent Sullivan testified that the sample she was given contained 74.3 grams of cocaine. The Defendant does not raise this discrepancy as an issue, and, regardless, both amounts are within the parameters of the Defendant's convicted offense. See Tenn. Code Ann. § 39-17-417(i).

Moreover, the Defendant admitted to the detectives and at trial to ownership of the cocaine and the marijuana. Detective Guyton testified that, during his discussion with the Defendant, the Defendant admitted to buying and selling drugs. Finally, Detective Guyton explained that a personal amount of cocaine would be no more than 0.5 grams, which would sell for approximately $40. Here, the Defendant was in possession of 74.3 grams of cocaine. Detective Guyton also testified that a personal amount of marijuana would be one to five grams, which would sell for approximately $10-40. In this case, the Defendant was in possession of 50.9 grams of marijuana. Based on this evidence, the jury was able to infer that the Defendant possessed the drugs for the purpose of selling them. See Tenn. Code Ann. § 39-17-419.

The Defendant claims that he did not admit to selling drugs and that he did not sell drugs. To the extent the Defendant avers that the jury should have discredited Detective Guyton's testimony about the Defendant's admission to selling drugs, we will not disturb the jury's implicit credibility findings. See Winters, 137 S.W.3d at 655. Therefore, sufficient evidence exists to support the Defendant's convictions of possession with intent to sell twenty-six or more grams cocaine and one-half (1/2) ounce or more but less than ten pounds of marijuana.

### Simple Possession of Alprazolam, Diazepam, and MDMA

It is a Class A misdemeanor "for a person to knowingly possess or casually exchange a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." Tenn. Code Ann. § 39-17-418(a), (c) (2006).

At trial, Detective Guyton testified that, upon a search of the Defendant's residence, the detectives found the following: a pill bottle containing approximately nine and a half Xanax pills; a pill bottle containing eleven pills labeled "MP153"; two sandwich bags containing approximately forty Xanax pills; and one small Ziploc-type bag containing one morphine pill, three Valium pills, and two Ecstasy pills. Special Agent Sullivan testified as an expert regarding her forensic testing of various drugs seized from the Defendant's residence submitted for analysis. She identified forty-nine and a half (49.5) tablets of Alprazolam, which is another name for Xanax, a Schedule IV drug, three white, round pills of Diazepam, another name for Valium, a Schedule IV drug, and two brown pills that were MDMA, another name for Ecstasy, a Schedule I drug. See Tenn. Code Ann. § 39-17-406(g)(2) (Supp. 2007); -412(c)(1) (Supp. 2007).

The Defendant admitted to Detective Guyton during his statement and at trial his ownership of all pills found at his residence. Thus, the evidence is sufficient to support the Defendant's convictions for possession of Alprazolam, Diazepam, and MDMA.

## Possession of a Firearm in the Commission of a Dangerous Felony

Pursuant to Tennessee Code Annotated section 39-17-1324(a) (Supp. 2007), "[i]t is an offense to possess a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony." For purposes of this statute, a "dangerous felony" includes "[a] felony involving the sale, manufacture, distribution or possession with intent to sell, manufacture or distribute a controlled substance defined in part 4 of this chapter." Id. § -1324(i).

The Defendant admitted that he had obtained the .9 millimeter handgun "for protection" after a recent home invasion at his apartment. He stated that he did not call the police after the home invasion because he did not like police officers. Thus, the evidence established that the Defendant possessed the handgun. Turning to the definition of a dangerous felony, we already have held above that the evidence is sufficient to support the Defendant's convictions of possession with intent to sell twenty-six or more grams cocaine and one-half (1/2) ounce or more but less than ten pounds of marijuana. Accordingly, the evidence is sufficient to support the Defendant's conviction of possession of a firearm in the commission of a dangerous felony.

## Possession of Drug Paraphernalia

It is a Class A misdemeanor "to use, or to possess with intent to use, drug paraphernalia to . . . prepare . . . a controlled substance in violation of this part." Tenn. Code Ann. § 39-17-425(a) (2006). In other words, the State must prove the following elements: "(1) that the defendant possessed an object; (2) that the object possessed was classifiable as drug paraphernalia; and (3) that the defendant intended to use that object for at least one of the illicit purposes enumerated in the statute." State v. Ross, 49 S.W.3d 833, 846 (Tenn. 2001) (citing State v. Mallard, 40 S.W.3d 473, 486 (Tenn. 2001)).

Detective Guyton testified that as a result of the search on April 1, 2008, he and the other detectives found three sets of digital scales, sandwich bags, and seventy-six grams of powder cocaine in the Defendant's apartment. The digital scales were found in various locations throughout the apartment, including the kitchen and the bathroom. The notebook that Detective Guyton characterized as a "drug ledger" was found in the bathroom in the vicinity of one of the digital scales. Detective Guyton also stated that one of the sets of scales had a white powder residue on it, indicative of its use for weighing cocaine.

Moreover, the detectives also found a glass pipe containing marijuana residue and rolling papers. Detective Guyton testified that these items commonly are used to roll marijuana cigarettes. The Defendant admitted to ownership of these items in his statement to Detective Guyton and at trial. Thus, the evidence is sufficient for a jury to find the Defendant guilty of possession of drug paraphernalia. Accordingly, the Defendant is entitled to no relief on his sufficiency of the evidence issue.

*Sentencing*

The Defendant contends that the trial court erred when it stated at the sentencing hearing that the Defendant "admitted to selling drugs at the residence he shared with his brother." Rather, the Defendant avers that he admitted solely to "*using* large quantities of drugs." (emphasis added). Additionally, the Defendant asserts that he should have been considered an especially mitigated offender and that the trial court erred when it found that no mitigating factors applied.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Susan Renee Bise, __ S.W.3d ___, ___, No. E2011-00005-SC-R11-CD, 2012 WL 4380564, at *17 (Tenn. Sept. 26, 2012). "[A] trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing decision." Id. at __, *20. This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts. (2006); see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

The Defendant has failed to include a copy of the transcript of the sentencing hearing in the record on appeal. As discussed with respect to the Defendant's suppression issue, the appellant must provide a record which conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). This rule also applies within the context of sentencing hearings. State v. Meeks, 779 S.W.2d 394, 397 (Tenn. Crim. App. 1988). Therefore, because the record does not contain a transcript of the sentencing hearing or a statement of the evidence presented at the hearing, we "must presume that the trial court's rulings were supported by sufficient evidence."

Oody, 823 S.W.2d at 559.  Accordingly, the Defendant is entitled to no relief on this issue.

## **Conclusion**

For the reasons articulated above, we affirm the Defendant's convictions and sentences.

_____
JEFFREY S. BIVINS, JUDGE