IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 3, 2024

## STATE OF TENNESSEE v. JOHN EDWARD ROACH

**Appeal from the Circuit Court for Hardin County**
**No. 22-CR-179        J. Brent Bradberry, Judge**

_____

### No. W2024-00036-CCA-R3-CD

_____


The Defendant, John Edward Roach, was convicted by a Hardin County jury of three drug-related offenses for which he received an effective sentence of twenty years' imprisonment. The sole issue presented for our review is whether the evidence is sufficient to support his conviction for possession of drug paraphernalia, a Class A misdemeanor. See Tenn. Code Ann. § 39-17-425 (a)(1)-(2). The Defendant argues that the State failed to establish (1) that the items seized from the search of his home constituted drug paraphernalia and (2) that the Defendant intended to use any of the seized items for an illicit purpose. Upon our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JILL BARTEE AYERS, JJ., joined

M. Todd Ridley, Assistant Public Defender – Appellate Division (on appeal); Tas Gardner, District Public Defender; Frankie Stanfill, Camden, Tennessee (at trial), for the appellant, John Edward Roach.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Neil Thompson, District Attorney General; and Morgan Reynolds, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

The bulk of the proof adduced at the Defendant's May 1, 2023 trial pertained to a single undercover controlled purchase of illegal drugs on April 14, 2022, which resulted in a Class B felony drug conviction not challenged in this appeal. Accordingly, we will

summarize the facts relevant to the misdemeanor drug paraphernalia conviction stemming from a search warrant conducted four days later, on April 18, 2022. Danny Crownover, a task force agent with the Tennessee Bureau of Investigation ("TBI"), testified that on April 14, 2022, he utilized a confidential informant (CI) to conduct an undercover controlled purchase of illegal drugs from the Defendant at his home in Hardin County, Tennessee. The CI and his vehicle were searched before and after the controlled purchase of drugs. Before the search, the CI was fitted with audio and video recording equipment and given $400 in documented funds to purchase drugs from the Defendant. Agent Crownover said that the equipment provided a live feed and showed the CI giving the Defendant $400. After some time, the Defendant gave the CI a bag containing a substance later determined to be 12.11 grams of methamphetamine. The recording of the controlled purchase, as well as the TBI lab report confirming that the substance was methamphetamine, were admitted into evidence.

On April 18, 2022, Agent Crownover executed a search warrant at the Defendant's home and recovered methamphetamine and suspected marijuana. Although another woman was present at the time of the search and claimed ownership of some of the drugs, the Defendant, who had been questioned separately, claimed "[a]ll of it" after being read his Miranda rights. The Defendant told Agent Crownover that he had been selling methamphetamine for about six months "just to get by." When asked if he was aware of any drug paraphernalia found during the search, Agent Crownover said, "Some syringes, a glass pipe. I can't remember." Asked further if there was any paraphernalia that would indicate the sale of drugs, Agent Crownover said he could not remember without referring to his notes. He agreed that the Defendant, the CI, and another individual can be overheard discussing scales on the April 14 controlled purchase recording.

On cross-examination, Agent Crownover confirmed that he had specialized training in narcotics and had attended several narcotics-related specialized schools. He was trained on the distinction between felony and misdemeanor drug arrests and agreed that he would automatically charge a felony based on the presence of more than .5 grams of drugs. He agreed that scales alone were not indicative that an individual was a dealer; however, he considered scales a "high qualifying factor." He opined that most individuals he had encountered who had scales were dealers. He clarified that the video recording of the April 14 controlled purchase did not capture the exchange of money between the CI and the Defendant and that the agents relied on the CI for that information.

Agent Allen Hooper, a narcotics investigator with the 24th Judicial Drug Task Force, testified that he did not take an active role in the April 14 controlled purchase from the Defendant. However, based on the April 14 controlled purchase, Agent Hooper obtained a search warrant for the Defendant's home. During the execution of the warrant, he observed the Defendant and a woman in a bedroom in which he recovered two bags of

methamphetamine, one bag of suspected marijuana, and multiple items of drug paraphernalia. Agent Hooper also found a cooler on the bed beside the Defendant, which contained multiple syringes, two digital scales, a glass vial with cotton filters, and two plastic baggies with a crystal-like substance that field tested positive for methamphetamine. He took photographs of where the items were located on the bed, which were admitted into evidence. When asked why scales are important when investigating drug activity, Agent Hooper responded, "Scales and multiple different paraphernalia can be indicative of the intent to resell illegal narcotics." Agent Hooper agreed that the larger bag of methamphetamine, which weighed approximately seven grams, was more than someone would use in one sitting. He said the smaller bag of methamphetamine, which weighed under two grams, was "getting a little bit closer to a user amount[.]" Following the search, Agent Hooper collected the evidence and eventually transported it to the 24th Judicial Drug Task Force office in Camden, Tennessee, to be handled by his director.

Director Tim Meggs of the 24th Judicial Drug Task Force testified that he logged the evidence obtained by Agent Hooper from the search of the Defendant's home, which included a bag containing homemade bongs, two bags containing a crystal-like substance, a bag containing a green leaf substance, a bag containing digital scales, and a bag containing multiple pipes with residue. Director Meggs took the suspected drugs to the TBI Crime Lab for testing, which confirmed that the larger bag contained 6.96 grams of methamphetamine. Although the TBI lab report was admitted into evidence, the suspected marijuana seized from the search was not scientifically tested or confirmed to be marijuana. Director Meggs also confirmed that the drug paraphernalia seized from the search never left his office and that any residue on the paraphernalia was not tested.

The Defendant elected not to offer any proof and moved for judgment of acquittal, which was granted, in part, dismissing count three of the indictment charging misdemeanor possession of marijuana on April 18, 2022. The Defendant was subsequently found guilty of possession with intent to sell 0.5 grams or more of methamphetamine on April 14, 2022 (count one), attempted possession with intent to sell 0.5 grams or more of methamphetamine on April 18, 2022 (count two), and unlawful drug paraphernalia uses and activities on April 18, 2022 (count four). Following a sentencing hearing, the trial court determined that the Defendant was a persistent offender and imposed a concurrent term of imprisonment of twenty years for count one, fifteen years for count two, and eleven months and twenty-nine days for count four. The sentences were ordered to be served consecutively to an unrelated case. The Defendant filed a motion for a new trial, which the trial court denied. The Defendant timely filed a notice of appeal, and this case is now properly before this court for review.

- 3 -

# ANALYSIS

To sustain a conviction for possession of drug paraphernalia, Tennessee Code Annotated section 39-17-425(a)(1) requires the State to prove three elements beyond a reasonable doubt: (1) that the defendant possessed an object; (2) that the object possessed was classifiable as drug paraphernalia; and (3) that the defendant intended to use that object for at least one of the illicit purposes enumerated in the statute. See State v. Ross, 49 S.W.3d 833, 846 (Tenn. 2001); State v. Mallard, 40 S.W.3d 473, 486 (Tenn. 2001) (listing elements to be proven under section 39-17-425(a)(1)). The Defendant concedes that the first element of this offense is met because the objects seized from his home were within his possession. He argues there was no proof of the second element, that a "straw" found on his property was classifiable as drug paraphernalia, or the third element, that he intended to use the objects seized from his home for at least one of the illicit purposes enumerated in the statute. See Ross, 49 S.W.3d at 846. The State submits that the jury could reasonably infer that the objects seized from the Defendant's home constitute drug paraphernalia and that the Defendant intended to use them for an illicit purpose. We agree with the State.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). When reviewing the sufficiency of the evidence, this court must "determine the elements that the State must prove to establish the offense" and then "analyze all of the evidence admitted at trial in order to determine whether each of the elements is supported by adequate proof." State v. Stephens, 521 S.W.3d 718, 723-24 (Tenn. 2017). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting Hanson, 279 S.W.3d at 275). The jury determines the weight to be given to circumstantial evidence, the inferences to be drawn from this evidence, and the extent to

which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." Wagner, 382 S.W.3d at 297 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)).

Tennessee Code Annotated section 39-17-425, which defines the offense of possession of drug paraphernalia, provides in pertinent part:

> [I]t is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance or controlled substance analogue in violation of this part.

Tenn. Code Ann. § 39-17-425(a)(1). In addition, drug paraphernalia is defined as follows:

> "Drug paraphernalia" means all equipment, products and materials of any kind which are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body, a controlled substance as defined in subdivision (4). . . . "Drug paraphernalia" includes, but is not limited to:
>
> . . . .
>
> (C) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marijuana, marijuana concentrates, marijuana oil, cocaine, hashish, or hashish oil into the human body, such as:
>
>> (i) Metal, acrylic, glass, stone, or plastic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;
>> (ii) Water pipes;
>> (iii) Carburetion tubes and devices;
>> (iv) Smoking and carburetion masks;
>> (v) Chamber pipes;
>> (vi) Carburetor pipes;

(vii) Electric pipes;
(viii) Chillums;
(ix) Bongs; and
(x) Ice pipes or chillers[.]

Id. § 39-17-402(12).

As to the determination of whether an object is drug paraphernalia, Tennessee Code Annotated section 39-17-424 provides:

In determining whether a particular object is drug paraphernalia as defined by § 39-17-402, the court or other authority making that determination shall, in addition to all other logically relevant factors, consider the following:

(1) Statements by the owner or anyone in control of the object concerning its use;

(2) Prior convictions, if any, of the owner or of anyone in control of the object for violation of any state or federal law relating to controlled substances or controlled substance analogues;

(3) The existence of any residue of controlled substances or controlled substance analogues on the object;

(4) Instructions, oral or written, provided with the object concerning its use;

(5) Descriptive materials accompanying the object that explain or depict its use;

(6) The manner in which the object is displayed for sale;

(7) The existence and scope of legitimate uses for the object in the community; and

(8) Expert testimony concerning its use.

Id. § 39-17-424.

Count four of the indictment charged the Defendant with "possession with intent to use, drug paraphernalia, to wit: multiple used and unused syringes, two (2) digital scales with residue, one (1) glass container with cotton filters and residue, one (1) marijuana

grinder with residue, multiple pipes with residue, [and] homemade bongs with residue[.]" Accordingly, the "object" in this case constitutes the items as listed in the indictment or the items seized in the Defendant's possession at the time of the search. The thrust of the Defendant's argument regarding the second element, whether the State proved the objects were drug paraphernalia, is that there was no testimony to identify the residue on the objects because the residue was not tested. Without such scientific evidence, the Defendant contends that the objects identified in the indictment do not meet the statutory guidelines in Tennessee Code Annotated section 39-17-402 and 39-17-424, and his conviction cannot stand.

We must dismiss the Defendant's challenge to the second element in short order because the statute defines drug paraphernalia broadly as "all equipment, products and *materials of any kind* which are used, intended for use, or designed for use in . . . preparing, . . . packaging, [or] repackaging . . . a controlled substance[.]" Id. § 39-17-402(12) (emphasis added). We are also instructed to consider the enumerated factors "in addition to all other logically relevant factors." Id. § 39-17-424. Moreover, we note that the significance of an object containing residue from a controlled substance distinguishes it from its ordinary, everyday use. It is only one factor for the jury to consider when determining whether an object qualifies as drug paraphernalia and is particularly informative in the absence of testimony regarding the nature of the object. Testing residue to determine whether it contains a controlled substance may be helpful, but it is not required to sustain a conviction for possession of drug paraphernalia.

With the above in mind, the record shows the jury considered testimony, unchallenged in this appeal, that the Defendant sold a felony amount of methamphetamine to a CI four days before the search of his home that yielded the objects challenged on appeal. The recency of an illegal drug transaction from the same location by the same Defendant can be circumstantial evidence that an object later seized from the same location in possession of the same Defendant qualifies as drug paraphernalia. In addition, the jury considered testimony from Agent Hooper and Agent Crownover regarding the drug paraphernalia seized from the Defendant's home. Agent Hooper testified to the presence of all objects in the indictment being seized from the Defendant's home at the time of the search. Photographs of the objects' locations during the search were also admitted into evidence at trial. Although the residue on the items was not tested to confirm that it was, in fact, a controlled substance, we also consider an object's proximity to an illegal substance as indicative of its purpose and intended use. Agent Hooper testified that the scales were found with two bags of methamphetamine in a cooler next to the Defendant. One of the bags contained a felony amount of methamphetamine. Id. § 39-17-419 ("[i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise

dispensing"). He also stated that scales and multiple different paraphernalia can be indicative of an intent to sell drugs. Finally, Agent Hooper stated that the amount of methamphetamine found together with the scales was more than someone would use in one sitting. During the search, the Defendant claimed "[a]ll of it" and told Agent Crownover that he had been selling methamphetamine for about six months "just to get by." Agent Crownover also testified that he found drug paraphernalia during the search in the form of "[s]ome syringes, a glass pipe."

Based on the above testimony, a jury could reasonably infer that the objects, as listed in the indictment, were "used or intended for use . . . [in] compounding, converting, producing, processing, preparing . . . packaging, repackaging, storing, containing, or concealing" a controlled substance, satisfying the definition of drug paraphernalia. See State v. Foster, No. W2020-00349-CCA-R3-CD, 2021 WL 1158156, at *9 (Tenn. Crim. App. Mar. 26, 2021) (noting that "[w]hile no proof was presented showing that the digital scale contained drug residue, there was no requirement that the scale actually contain drug residue in order for the State to prove the defendant used or intended to use the scale to weigh a controlled substance, including marijuana").

Next, the Defendant argues that the State failed to establish that he intended to use the objects for an illicit purpose. The Defendant acknowledges that both agents testified that the scales and multiple different paraphernalia can be indicative of an intent to sell illegal narcotics. However, he dismisses the agents' testimony (1) because it was general, not specific to the Defendant, and (2) because the agents were not qualified as experts in the field as contemplated by Tennessee Code Annotated section 39-17-424(8). Once again, we decline to construe the drug paraphernalia statute so narrowly. We begin with the fundamental premise that a defendant's intent can rarely be shown by direct proof and must necessarily be shown by circumstantial evidence. State v. Hall, 682 S.W.3d 143, 157 (Tenn. 2019). Accordingly, intent is a question of fact within the jury's province to infer from surrounding facts and circumstances. State v. Brown, 311 S.W.3d 422, 432 (Tenn. 2010). The "illicit purposes" in the statute include the following, in pertinent part: to "convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale . . . a controlled substance[.]" Tenn. Code Ann. § 39-17-425(a)(1). We conclude that the Defendant intended to use the objects listed in the indictment for an illicit purpose based on the same reasoning used to determine that the objects qualified as drug paraphernalia. Section 39-17-424 permits the jury to consider expert testimony as to the objects' intended use when determining whether the object qualifies as drug paraphernalia. The statute does not require such testimony. Here, the agents testified regarding the objects' intended use based on their extensive background, training, and experience in narcotics. The Defendant did not object to the agents' lay testimony concerning the nature of the drug paraphernalia at trial, and we decline to consider the issue for the first time on appeal. Accordingly, it was within the province of the jury to infer

from the facts and circumstances of the case that the Defendant intended to use the objects listed in the indictment for an illicit purpose.  He is not entitled to relief.

Viewing the evidence in the light most favorable to the State, the record supports the jury's finding that the objects seized from the Defendant's home constituted drug paraphernalia and that the Defendant intended to use the objects for an illicit purpose. Accordingly, the evidence is sufficient to sustain the Defendant's conviction for unlawful possession of drug paraphernalia.

## CONCLUSION

Based on the above reasoning and authority, we affirm the trial court's judgment.

s/             Camille             R. McMullen_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE